[No. 32167.   *En Banc.*   December 11, 1952.]

BRUCE BORST, *by his Guardian ad Litem,* C. M. CLARK, *Appellant,* v. PAUL H. BORST *et al., Respondents.*[1]

[1]Reported in 251 P. (2d) 149.

*Ned W. Kimball, Tonkoff & Holst,* and *Blaine Hopp, Jr.,* for appellant.

*Hughes & Jeffers,* for respondents.

HAMLEY, J.—May an unemancipated minor recover damages from a parent for permanent injuries sustained by reason of the parent's negligence while operating a truck for business purposes?

The trial court answered "No," relying on *Roller v. Roller,* 37 Wash. 242, 79 Pac. 788, 107 Am. St. 805, 3 Ann. Cas. 1, 68 L. R. A. 893, and sustained a demurrer to the complaint. Plaintiff elected to stand on the complaint, a judgment of dismissal with prejudice was entered, and plaintiff now appeals.

The action was brought by the minor child through his duly appointed guardian *ad litem.* The complaint alleges that Bruce Borst, a minor five years of age, resides at the home of his father, Paul H. Borst, in Coulee City, Washington; that the father and one Frank Borst, both of whom are named as defendants, are partners, and are the owners of a certain truck and trailer used by them to transport property for hire, as a common carrier; that on June 13, 1951, the son was amusing himself in the front yard of the family home along the edge of the lawn, and was playing with a certain cardboard box; that the father, while operating the partnership truck and trailer along the street in a reckless and unlawful manner, drove the vehicles over the person of the son (who was apparently then playing in the street with the cardboard box); and that, as a result, the son sustained painful and permanent personal injuries. The prayer of the complaint is for general damages in the sum of

one hundred thousand dollars. A prayer for $3,550 special damages, representing hospital and medical expenses, was stricken on stipulation.

In *Roller v. Roller, supra,* it was held that a minor unemancipated daughter could not maintain an action against her father for rape. In reaching this conclusion, the court stated that there is a general rule of the common law prohibiting a minor child from suing a parent for damages arising in tort; that this rule is based upon the interest which society has in preserving harmony in domestic relations; and that while it can be said, with some reason, that the family relations had already been irreparably disturbed, if it be once established that a child has a right to sue a parent for a tort, "there is no practical line of demarkation which can be drawn."

Two further reasons for the immunity rule as between parent and child were stated: (1) To permit a child to recover a judgment from a parent would be absurd, for, in the event of the child's death, the parent would become heir to the very property which had been wrested from him by the law; and (2) the public has an interest in the financial welfare of all minor members of the family, and the family property should therefore not be appropriated by any one minor child. No authorities were cited in support of these propositions.

The only decision cited in the *Roller* opinion as actually applying such a rule of immunity in actions between parent and child is *Hewlett v. George,* 68 Miss. 703, 9 So. 885, 13 L. R. A. 682. In proof of the announced common-law rule, the opinion refers to Cooley on Torts, p. 276, and Schouler on Domestic Relations, § 275. It was also stated in the opinion that the relationship between parent and child is analogous to coverture, "where a husband or wife is forbidden to sue the other spouse for torts . . ." Two decisions of other courts, applying such an immunity rule in the case of husband and wife, were cited.

Referring first to the law on the subject as it existed at the time of our decision in the *Roller* case, there appear to

have been no English or American appellate court decisions on this question prior to 1891. *Wick v. Wick,* 192 Wis. 260, 261, 212 N. W. 787, 52 A. L. R. 1113; *Dunlap v. Dunlap,* 84 N. H. 352, 358, 150 Atl. 905, 906, 71 A. L. R. 1055; *Worrell v. Worrell,* 174 Va. 11, 18, 4 S. E. (2d) 343, 345; Torts Between Persons in Domestic Relation, McCurdy, 43 Harvard Law Review 1030, 1061 *et seq.*; 19 A. L. R. (2d) 423, 425, annotation. The early English and American text writing on the subject is meager, conflicting, and obscure. Such attention as the early writers gave to the subject was limited, for the most part, to cases where the child had been injured due to an excess of disciplinary action. As to such cases, the predominant view seems to have favored a cause of action in the child, and no writer stated categorically that such suits were forbidden by common-law rule. See Reeve, Domestic Relations 288 (1816); Addison, Torts 423 (1860); Schouler, Domestic Relations (3d ed.) § 275 (1882); (5th ed.) 443, § 275 (1895); Eversley, Domestic Relations 601 (1885); Pollock on Torts 107 (1887); Cooley on Torts (2d ed.) 276 (1888); Clerk and Lindsell, Torts 152 (1889).

Cooley is quoted in *Roller v. Roller, supra,* as saying that "for an injury suffered by the child in that relation no action will lie at the common law." Cooley on Torts (2d ed.) 276 (1888). Reference to the context indicates that Cooley was referring to the failure of a parent to support his child, and to torts of third persons, resulting in injury to the parent and consequent deprivation of the child's source of support. The final sentence of the same paragraph in Cooley's text reads: "Where the child is injured in his own property or person, redress has no necessary connection with the family relation."

Elsewhere in his work, Cooley refers to parental disciplinary action, such as restraint of the person and corporal punishment. In that connection, the view is expressed that, where the parent exceeds reasonable bounds, there is no principle which precludes the child from recovering damages. He goes on to say, however, that the policy of permitting actions which thus invite the child to contest the parent's authority is so questionable that it may well be

doubted if the right would ever be sanctioned. Cooley on Torts (2d ed.) 197 (1888).

In the portion of his text quoted in the *Roller* opinion, Professor Schouler stated that suits by children, after becoming of age, against a parent for alleged maltreatment or other injury "seems abhorrent to the idea of family discipline . . . and the privacy and mutual confidence which should obtain in the household." He therefore urged that suits in tort by child against parent should be discouraged by the courts. Schouler, Domestic Relations (3d ed.) § 275 (1882); (5th ed.) 443, § 275 (1895). It is uncertain whether Schouler meant by this that there is no cause of action, or only that such causes of action should be discouraged. 43 Harvard Law Review 1030, 1061.

The first appellate court decision on the subject is *Hewlett v. George,* 68 Miss. 703, 9 So. 885, 13 L. R. A. 682, decided by the supreme court of Mississippi in 1891. In the *Hewlett* case, a minor, unemancipated daughter sued her mother for damages resulting from the alleged willful, illegal and malicious imprisoning of the daughter in an insane asylum. It was the mother's claim that this restraint was necessary to protect the daughter and the family from the daughter's loose and unchaste habits. A judgment for the plaintiff was reversed in an opinion, only one paragraph of which was devoted to this particular problem. The court cited no authority and did not represent that its view expressed any established common-law rule. The heart of the decision is contained in these words:

"But, so long as the parent is under obligation to care for, guide and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to a minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. The state, through its criminal laws, will give the minor child protection from parental violence and wrongdoing, and this is all the child can be heard to demand."

The question was next dealt with in *McKelvey v. McKelvey*, 111 Tenn. 388, 77 S. W. 664, 64 L. R. A. 991, decided in 1903. Here the stepmother was charged with cruel and inhuman treatment of the plaintiff child, with the consent of the defendant father. The court affirmed a judgment for the defendant, and, for the first time by any court or text authority, announced that there was a common-law rule denying to the child a civil remedy in such a case. In support of this view, the court cited *Hewlett v. George* (which had not purported to announce a common-law rule) and several cases and authorities dealing with the husband's immunity to suit by his wife.

This was the state of the law when *Roller v. Roller, supra,* was decided in 1905. Our opinion in that case, the third appellate court decision dealing with the subject, was the first to apply the so-called immunity rule in a situation not involving family discipline. In view of the foregoing summary of the law as it had developed up to that time, the statement in that opinion that "at common law it is well established that a minor child cannot sue a parent for a tort," is clearly erroneous.

Taking their cue from the *Hewlett, McKelvey* and *Roller* cases, the great majority of decisions dealing with the subject since 1905 have applied the immunity rule so as to relieve parents from liability in such cases. For excellent reviews of the decisional law on the subject, see *Dunlap v. Dunlap*, 84 N. H. 352, 150 Atl. 905; *Worrell v. Worrell*, 174 Va. 11, 4 S. E. (2d) 343; *Cowgill v. Boock*, 189 Ore. 282, 218 P. (2d) 445, 19 A. L. R. (2d) 405; *Mahnke v. Moore*, 77 A. (2d) (Md.) 923; *Signs v. Signs*, 156 Ohio St. 566, 103 N. E. (2d) 743; Prosser on Torts 905, § 99; 43 Harvard Law Review 1030, 1056; 19 A. L. R. (2d) 423, annotation.

In our further review of the cases, attention will be directed primarily to those which, like the case before us, involve a charge of negligence. It should be mentioned, however, that where the tort of the parent is intentional or there is willful misconduct, the recent decisions uniformly allow the child a cause of action. In *Cowgill v. Boock,*

*supra,* a cause of action against the parent was allowed for "a wilful or malicious personal tort." The tort there was the father's insistence on driving the family car while under the influence of liquor, and compelling his son to remain as a passenger in the vehicle. In *Mahnke v. Moore, supra,* a cause of action was granted where injury resulted from "cruel and inhuman treatment or for malicious and wanton wrongs." There, the father murdered the mother and then committed suicide, all in the presence of the child. In *Wright v. Wright,* 70 S. E. (2d) (Ga. App.) 152, the court stated that an action would lie where there is "an act of cruelty sufficient to sever the parental relationship and evidenced by wanton and malicious misconduct on the part of such parent." See, also, 19 A. L. R. (2d) 423, 451.

The courts are in apparent agreement that where the child, while riding in the family automobile, is injured as a result of negligence on the part of the parent driver, no cause of action against the parent may be maintained. *Small v. Morrison,* 185 N. C. 577, 118 S. E. 12, 31 A. L. R. 1135; *Matarese v. Matarese,* 47 R. I. 131, 131 Atl. 198, 42 A. L. R. 1360; *Wick v. Wick,* 192 Wis. 260, 212 N. W. 787; *Mesite v. Kirchenstein,* 109 Conn. 77, 145 Atl. 753; *Trudell v. Leatherby,* 212 Cal. 678, 300 Pac. 7; *Norfolk Southern R. Co. v. Gretakis,* 162 Va. 597, 174 S. E. 841; *Lasecki v. Kabara,* 235 Wis. 645, 294 N. W. 33, 130 A. L. R. 883; *Cannon v. Cannon,* 287 N. Y. 425, 40 N. E. (2d) 236; *Villaret v. Villaret,* 169 F. (2d) 677; *Redding v. Redding,* 235 N. C. 638, 70 S. E. (2d) 676.

Despite the accord on this kind of negligence situation, dissatisfaction of some judges with the *rationale* of these decisions was early manifested. In *Small v. Morrison, supra,* which was the first case to apply the immunity rule in a negligence situation, Chief Justice Clark delivered an elaborate dissenting opinion. In the second such decision, *Wick v. Wick, supra,* Judge Crownhart filed an extensive dissenting opinion. In *Sorrentino v. Sorrentino,* 248 N. Y. 626, 162 N. E. 551, which was the forerunner of *Cannon v. Cannon, supra,* Chief Justice Cardozo and Judges Andrews and Crane recorded their dissents.

The immunity rule has been less uniformly applied in situations of parental negligence not involving the operation of the family car. Where the child was injured due to the parent's negligence, while employed in the parent's business, a cause of action was denied in *Taubert v. Taubert,* 103 Minn. 247, 114 N. W. 763, decided in 1908, but allowed in *Dunlap v. Dunlap,* 84 N. H. 352, 150 Atl. 905, decided in 1930. Indemnity insurance was involved in both cases and, in the *Dunlap* case, was held to justify an exception to the immunity rule. Where the child was injured, due to the parent's negligence, while riding in a school bus owned or operated by the parent, recovery has been permitted. *Lusk v. Lusk,* 113 W. Va. 17, 166 S. E. 538; *Worrell v. Worrell,* 174 Va. 11, 4 S. E. (2d) 343. Public liability insurance was present in both cases and was probably the controlling factor in the decisions.

Where the child was injured due to the negligence of the father while carrying on his business or vocation, the cases are again divided. Recovery was denied in *Belleson v. Skilbeck,* 185 Minn. 537, 242 N. W. 1, decided in 1932; and in *Luster v. Luster,* 299 Mass. 480, 13 N. E. (2d) 438, decided in 1938. Public liability insurance was present in both of these cases, but was not regarded as calling for an exception to the immunity rule.

In the 1952 case of *Signs v. Signs,* 156 Ohio St. 566, 103 N. E. (2d) 743, the immunity rule was held inapplicable. This was not an automobile case. The child was injured, due to the negligence of his father and the latter's partner, while playing around a gasoline pump maintained by the partnership. Although public liability insurance was present, the court specifically rejected the argument that this factor warranted an exception to the immunity rule. Instead, the court held that the immunity rule has no application where the negligence occurs while the parent is engaged in his business or vocation. This reasoning had been specifically rejected in the earlier cases of *Lusk v. Lusk* and *Luster v. Luster, supra.*

The case before us also involves the situation where an unemancipated minor is injured due to the alleged negli-

gence of the father while carrying on his vocation or business. The problem of whether the child should be granted or denied a cause of action can best be solved by applying to the factual situation of this case the principal reasons which have been advanced in support of the immunity rule. If those reasons have pertinence and significance under the facts of this case, immunity against suit should be accorded the parent; otherwise not.

The reason most frequently advanced in support of the immunity rule is that the public interest in maintaining family tranquillity requires that such suits not be permitted. This is the only reason relied upon in the initial case of *Hewlett v. George, supra.* It is the principal basis for the court's decision in *Small v. Morrison, supra*; *Matarese v. Matarese, supra; Wick v. Wick, supra*; and *Mesite v. Kirchenstein, supra.* In other cases, it is one of a number of reasons advanced in support of the immunity rule.

It cannot be denied that suits by minors against their parents to recover damages sustained as a result of the parent's negligence in carrying on a business or vocation may disturb family tranquillity. But is that a sufficient ground for denying a cause of action as a matter of law?

Filial and parental love and respect, it would seem, are the best guardians of family tranquillity. It is futile to expect that such feelings can be created or reinstated by rules of court. As was said in *Dunlap v. Dunlap, supra,* "The communal family life is held together and its continuity assured by something finer than legal command." The same view was expressed in *Rozell v. Rozell*, 281 N. Y. 106, 22 N. E. (2d) 254, 256, 123 A. L. R. 1015.

In the comparatively rare case where a child brings such an action, the likelihood is that either the peace of the home has already been disturbed beyond repair, or that, because of the existing circumstances, the suit will not disturb existing tranquillity.

Minors have always been permitted to sue their parents in matters affecting property and contract rights. *Dunlap v. Dunlap, supra*; *Lusk v. Lusk, supra*; *Worrell v. Worrell, supra*; *Signs v. Signs, supra*; *Cowgill v. Boock, supra.* There

is no basis in experience for assuming that such suits do not disturb domestic tranquillity to the same extent as would personal injury suits.  43 Harv. L. Rev. 1030, 1075.  Since the family tranquillity argument is not considered as controlling where property rights are involved, it ought not to stand in the way where the claim relates to personal injuries.  On this we are in accord with the view expressed in *Signs v. Signs, supra,* where it is said:

"It seems absurd to say that it is legal and proper for an unemancipated child to bring an action against his parent concerning the child's property rights yet to be utterly without redress with reference to injury to his person.

"It is difficult to understand by what legerdemain of reason, logic or law such a situation can exist or how it can be said that domestic harmony would be undisturbed in one case and be upset in the other."

■  A second reason frequently advanced in support of the immunity rule is that actions by children against their parents tend to undermine parental authority and discipline. See *Small v. Morrison, supra*; *Wick v. Wick, supra*; and *Mesite v. Kirchenstein, supra.*  The field of parental control and discipline covers such matters as the maintenance of the home, chastisement, and no doubt other activities which need not here be delineated.  But when the parental activity whereby the child was injured has nothing to do with parental control and discipline, a suit involving such activity cannot be said to undermine those sinews of family life. And even if such a suit should tend to impair family discipline in some degree, that would not seem to call for application of the immunity rule any more than in cases where the child sues to enforce a property right.

It is recognized that, unless this parental authority and control argument is uniformly applied in all cases, courts will be required to draw the line of demarcation.  In *Roller v. Roller, supra,* the view was expressed that there would be no practicable way to draw such a line.

While it may be acknowledged that difficult cases can be stated, this does not appeal to us as a sound basis for denying access to courts of law.  In *Dunlap v. Dunlap, supra,*

commenting on this reason for denying relief in any case, the court said that this is to attribute to the law and to legal procedure "an impotence which is not usually assumed." Professor McCurdy also believes that this argument is not convincing, and points out that, in administering the criminal code, the courts draw this very line. 43 Harv. L. Rev. 1030, 1077. There is certainly no difficulty in drawing the line in this case, where parental authority and control is not remotely involved.

A third reason which is advanced in favor of the immunity rule is the so-called "family exchequer" argument. According to this view, the public has an interest in the financial welfare of all minor members of the family, and the family property should therefore not be appropriated by any one minor child. *Roller v. Roller, supra.* In *Dunlap v. Dunlap, supra,* it is pointed out that this argument ignores the parent's power to distribute his favors as he will, and leaves out of the picture the depletion of the child's assets of health and strength through the injury. Furthermore, a child has no legally recognized claim to any portion of the parent's property or even to equality of treatment.

It may also be observed that, in a particular case, there may be no other children, or the family resources may be such that recovery of judgment will in no sense prejudice the interests of other children. In our opinion, this argument has no more validity in the case of suits between parent and child than where the parent is sued by a stranger. In the latter case the parent's children may be financially prejudiced, but this does not immunize the parent.

A fourth argument in support of the immunity rule, which has been discussed in some of the cases, is the possibility of collusion and the danger of fraud if such suits are permitted. Such a suggestion was made in *Luster v. Luster,* 299 Mass. 480, 13 N. E. (2d) 438, and *Villaret v. Villaret,* 169 F. (2d) 677, though in neither case was the cause of action denied for that reason. Our research has failed to reveal any case upholding the immunity rule which has actually relied upon this argument. On the contrary, several decisions which have denied immunity have dealt with

this argument and rejected it. See *Dunlap v. Dunlap, supra*; *Cowgill v. Boock, supra*; *Signs v. Signs, supra*. See, also, 43 Harv. L. Rev. 1030, 1072.

It will be noted that this "fraud and collusion" argument is the exact reverse of the "family tranquillity" argument. Under the first of these arguments, the immunity rule is justified because the suit would be so friendly that collusion might be involved; under the other argument, the immunity rule is justified because the suit would be so unfriendly that it would tend to disturb the peace of the fireside. This seeming inconsistency is explained by the fact that those who give stock to the fraud and collusion argument are taking into account the probable presence of public liability or indemnity insurance in certain types of cases.

A number of courts have held the immunity rule inapplicable where public liability or indemnity insurance was present. *Dunlap v. Dunlap, supra*; *Lusk v. Lusk, supra*; *Worrell v. Worrell, supra*. Other courts have reached the contrary conclusion that the presence of liability insurance is immaterial. *Small v. Morrison, supra*; *Elias v. Collins*, 237 Mich. 175, 211 N. W. 88, 52 A. L. R. 1118; *Belleson v. Skilbeck, supra*; *Norfolk Southern R. Co. v. Gretakis*, 162 Va. 597, 174 S. E. 841; *Signs v. Signs, supra*. We are not here called upon to pass upon this point, since the complaint contains no allegations as to insurance. It is fair to say, however, that if the presence of liability insurance is not to be taken into account in determining whether the family tranquillity argument can be disregarded and immunity therefore denied, neither should it be taken into account in determining whether there is such prospect of fraud and collusion that immunity must be granted.

The courts may and should take cognizance of fraud and collusion when found to exist in a particular case. However, the fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class. Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases. *Rozell v. Rozell, supra*. If those proc-

esses prove inadequate, the problem becomes one for the legislature. See *Signs v. Signs, supra.* Courts will not immunize tort feasors from liability in a whole class of cases because of the possibility of fraud, but will depend upon the legislature to deal with the problem as a question of public policy.

The development of the law in host-guest automobile cases in this state tends to support the view just expressed. Prior to 1933, hosts were held liable for injury to their guests where gross negligence was shown. *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27. But fraud and collusion became so prevalent in this class of cases that the legislature, in 1933, enacted the host-guest statute, confining liability to cases in which the accident was "intentional." Laws of 1933, chapter 18, p. 145, which, as amended, is now Rem. Rev. Stat., Vol. 7A, § 6360-121 (*cf.* RCW 46.08.080). See *Taylor v. Taug,* 17 Wn. (2d) 533, 536, 136 P. (2d) 176, and *Upchurch v. Hubbard,* 29 Wn. (2d) 559, 566, 188 P. (2d) 82.

■ A fifth argument sometimes advanced in support of the immunity rule is based upon the asserted analogy between the parent and child relationship and the husband and wife relationship. In the absence of statute, a husband or wife may not sue his or her spouse for a tort committed upon the person during coverture. *Schultz v. Christopher,* 65 Wash. 496, 118 Pac. 629. This analogy was adverted to in *Roller v. Roller, supra,* but apparently was not made the basis of the decision.

If the two relationships are analogous, it must be because there is legal identity between parent and child to the same extent as there is between husband and wife. One court has suggested that there is legal identity between parent and child. *Mesite v. Kirchenstein,* 109 Conn. 77, 145 Atl. 753, 756. However, this decision seems to stand alone, and the general view is that the doctrine of identification does not apply to the parent and child relationship. *Rozell v. Rozell,* 281 N. Y. 106, 22 N. E. (2d) 254, 256; 43 Harv. L. Rev. 1030, 1068. For the reasons indicated by the following authorities, we do not believe that immunity in the parent and child cases can be predicated upon an analogy with the husband

and wife immunity rule. *Dunlap v. Dunlap, supra*; *Worrell v. Worrell, supra*; *Signs v. Signs, supra*; Prosser on Torts 905, § 99; 43 Harv. L. Rev. 1030, 1074.

Among other reasons which have been advanced in favor of the immunity rule are the following:

(1) The father may inherit any money the child recovers in such an action. (Suggested by Eversley, Domestic Relations (3d ed.) 579, and relied upon in *Roller v. Roller, supra*; rejected in *Dunlap v. Dunlap, supra*; and 43 Harv. L. Rev. 1030, 1073.)

(2) The child would otherwise be permitted to bring a "stale" action after reaching majority. (Relied upon in *Small v. Morrison, supra*. But this question of public policy is settled by our statute which tolls the applicable statute of limitations during the minority of the plaintiff, regardless of whom the defendant may be. See Rem. Rev. Stat., § 169 (*cf.* RCW 4.16.190). In any event, this action was brought within five months of the date of the accident.) ·

. (3) The concept of a sovereign family government demands the immunity rule. (Concurring opinion of Judge Hoke in *Small v. Morrison, supra*; *Matarese v. Matarese, supra*; and *Mesite v. Kirchenstein, supra*.) In *Dunlap v. Dunlap, supra*, this argument was rejected as putting "the parent in the position of a king, who can do no wrong." McCurdy likewise rejects this argument as being based upon the obsolete conception of the family as a unit of government. 43 Harv. L. Rev. 1030, 1076.

We agree with the opinion in *Dunlap v. Dunlap, supra*, that the miscellaneous reasons listed above are "too unsubstantial to be considered as more than mere makeweights." With or without those makeweights, however, the foregoing analysis leads us to believe that none of the arguments which have been discussed above provides a logical and just basis for an absolute rule of immunity applicable to all actions arising in tort for the recovery of personal injury damages.

■ Nevertheless, there do exist, in our opinion, some factors and considerations in connection with the parent-

child relationship which justify some immunity of the parent to suit. If those factors and considerations are properly identified and understood, the appropriate scope of the immunity rule will become apparent.

Parenthood places a grave responsibility upon the father and mother. It is their duty to rear and discipline the child. In rearing the child, the parents must provide a home and perform tasks around the home and on the premises. In most cases, it is necessary or convenient to provide a car for family transportation. In all the family activities, the parents and children are living and working together in close relationship, with neither the possibility of dealing with each other at arm's length, as one stranger to another, nor the desire to so deal. The duty to discipline the child carries with it the right to chastise and to prescribe a course of conduct designed for the child's development and welfare. This in turn demands that the parents be given a wide sphere of discretion.

In order that these parental duties may adequately be performed, it is necessary that the parents be not subject to the risk of suit at the hands of their children. If such suits were common-place, or even possible, the freedom and willingness of the father and mother to provide for the needs, comforts and pleasures of the family would be seriously impaired. Public policy therefore demands that parents be given immunity from such suits while in the discharge of parental duties.

These views accord very closely with those expressed in the concurring opinion of Judge Rossman in *Cowgill v. Boock, supra.* "The parental non-liability," says Judge Rossman, "is not granted as a reward, but as a means of enabling the parents to discharge the duties which society exacts." See, also, 43 Harv. L. Rev. 1030, 1078, 1080. We do not determine the question of whether the immunity should be absolute or conditional with respect to acts performed in the discharge of parental duties, as it is not before us.

The reasons for the rule do not exist, and the mantle of immunity therefore disappears, where the tort is committed by the parent while dealing with the child in a nonparental transaction. *Cowgill v. Boock, supra*, concurring opinion of Judge Rossman; 43 Harv. L. Rev. 1030, 1080. We therefore disapprove, as too broad, the holding in *Roller v. Roller, supra* (upon which the trial court here justifiably relied), that a minor child cannot, under any circumstances, sue a parent for a tort resulting in personal injuries.

In so doing, we have not lost sight of the suggestion that the courts should wait until there is legislative sanction for such an action. There is involved here no rule of property or contract, but only a rule of nonliability benefiting a particular class of persons in actions *ex delicto*. There is no statutory sanction for the absolute rule of immunity announced in *Roller v. Roller, supra*. The purported reasons for the absolute rule have been found, on analysis, to be without merit. The true role of the legislature, under the circumstances, is to restrict liability if it chooses to do so, as it did in the host-guest situation. Where the proposal is to open the doors of the court, rather than to close them, the courts are quite competent to act for themselves. As Judge Desmond said in the recent case of *Woods v. Lancet*, 303 N. Y. 349, 102 N. E. (2d) 691, 694, in dealing with a similar suggestion:

"Legislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court-made rule."

■ The only question which remains is whether, in the operation of the truck and trailer on partnership business, respondent father was engaged in the performance of a parental duty. It is, of course, the obligation of the husband and father to earn a living and support his family. But, though the fruits of this business activity are for the benefit of the family, the activity itself is not intimately associated with the parent-child relationship. The fact that the child on the public street was respondent's son added nothing to

the father's duties or difficulties in operating the business vehicles. For all practical purposes, the relationship between the two at the time of this accident was not parent and child, but driver and pedestrian. The cost of operating the business, if recovery is permitted here, will be no greater than it would have been had a neighbor boy been the victim. We accordingly agree with the result reached in *Signs v. Signs, supra,* and hold that, since respondent was engaged in his business or occupation at the time of the accident, the immunity rule does not apply, and the complaint states a cause of action.

The prayer is for general damages, and therefore we have no question presented as to the right of an unemancipated minor to recover judgment from his father for medical expense, or loss of earnings prior to reaching majority.

The judgment is reversed and remanded, with directions to overrule the demurrer.

MALLERY, HILL, GRADY, DONWORTH, FINLEY, and WEAVER, JJ., concur.

SCHWELLENBACH, C. J., (dissenting)—This five-year-old boy, through his guardian *ad litem,* is suing his father and uncle, as partners, for the modest sum of one hundred thousand dollars. The complaint alleges that the boy's father operated a tractor and trailer "in a reckless and unlawful manner" and "wantonly, wilfully and without regard for said plaintiff drove said tractor and trailer over the person of plaintiff." We assume that this action is brought in good faith as an adversary proceeding. The fact that a child would charge that his father did "wantonly, wilfully and without regard" for his five-year-old son, drive a tractor and trailer over the child, would be absolutely contrary to the interest which society has in preserving harmony in domestic relations. Members of the family could not help but take sides in such a proceeding, and some would rise up in righteous indignation against such a father. This is the kind of a situation which the salutary rule in the *Roller* case would prevent.

On the other hand, if this is not an adversary proceeding in good faith, but rather a so-called "friendly" suit, it would be fraught with danger of fraud and collusion. The complaint alleges that the defendants are common carriers. Under state law, a common carrier is required to either procure and file liability and property damage insurance, or deposit such security as the department shall require. The majority states, with reference to the fraud and collusion problem, that the courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases. This may be a theoretical solution, but we know that it just simply cannot be done. The only practical solution is to stop it at its source.

The majority opinion sets a precedent which will open the flood gates for hundreds of cases of this kind. The result will be either the irreparable disturbance of the family relations in adversary actions brought in good faith, or fraud or collusion in so-called "friendly" suits.

OLSON, J., concurs with SCHWELLENBACH, C. J.