Fuld, J. (dissenting).
If the present decision were necessary to preserve the integrity of the family, I would subscribe to it. But I do not believe that it is. In my opinion, the doctrine of family immunity, which underlies the holding, is based on dubious prophecy and, at least when applied to deny redress in *475 automobile negligence cases, is wrong in principle and at odds with justice and modern-day realities.[1]
The family immunity doctrine, without precedent in English common law (see Prosser, Law of Torts [2d ed., 1955], p. 675; McCurdy, Torts Between Persons in Domestic Relation, 43 Harv. L. Rev. 1030, 1059), was first announced in 1891 in Mississippi. (See Hewlett v. George, 68 Miss. 703.) There the tort was willful. A minor daughter sued her mother for maliciously confining her in an insane asylum. Public policy, it was held, forbade the suit; to permit such an action would undermine parental authority and disrupt domestic harmony. The decision was followed in Tennessee and in Washington. In Tennessee, a minor sued father and stepmother for cruel and inhuman treatment. (See McKelvey v. McKelvey, 111 Tenn. 388.) In Washington, a 15-year-old daughter sued her father who had ravished her. (See Roller v. Roller, 37 Wash. 242.) The court denied a right of action to the child. To allow a remedy in such a case would, it was said, open the door to one for injuries which were negligent, since in principle no distinction could be made between them. The peace of the family would be marred if the conduct of the parent could thus be challenged in a civil court.
The immunity doctrine soon spread to cases involving negligently caused injuries without any change in the underlying reasoning. (See Taubert v. Taubert, 103 Minn. 247; Small v. Morrison, 185 N. C. 577; Matarese v. Matarese, 47 R. I. 131; Wick v. Wick, 192 Wis. 260.) And in 1928, this court adopted the rule exempting parents from liability to an unemancipated minor for personal injuries caused by their negligence in operating an automobile (see Sorrentino v. Sorrentino, 248 N. Y. 626); no opinion was written and the vote, 4 to 3 for affirmance, of a no-opinion Appellate Division decision, found Cabdozo,, Oh. J., and Crane and Andrews, JJ., dissenting. Fourteen years later, relying upon the Sorrentino case, the court reaffirmed the doctrine. (See Cannon v. Cannon, 287 N. Y. 425.)
A rule which so incongruously shields conceded wrongdoing bears a heavy burden of justification. For me, the burden is *476 not met either by the early rationale or by other arguments more recently advanced. A parent who by negligence injures his minor child surely commits a civil “ wrong ” in the sense that there is neither lawful right nor privilege to inflict the injury. And, conversely, the law does not, as I understand it, deliberately carve an exception in favor of parents out of the right of a minor child to be secure from negligent harm to his person.
There is a wrong, it may be said, but the remedy is withheld for reasons of fundamental public policy, namely, to prevent undermining parental authority and disrupting the peace of the family. That principle might be compelling in this case if consistently and evenhandedly applied whenever a child sues his parent. But, since innumerable exceptions and qualifications to its application have evolved, it can no longer serve as a forceful or valid basis for denying liability.
First, the doctrine does not apply if the child is of legal age. If filial duty or family peace is the test, it is impossible to understand why a distinction should be made between minor children and those who are adult. The Biblical command, “ Honor thy father and thy mother”, does not end at 21. Yet there is no doubt that the grown son or daughter, the emancipated minor, may sue the parent for negligent wrongs. (See Wood v. Wood, 135 Conn. 280; Taubert v. Taubert, 103 Minn. 247, supra; Lancaster v. Lancaster, 213 Miss. 536; Groh v. W. O. Krahn, Inc., 223 Wis. 662.)
Nor is it solely to a child of adult years that the immunity yields. Even an unemancipated minor child may sue his parent for an injury to his property. (Domestic Relations Law, §§ 80, 83; see Lamb v. Lamb, 146 N. Y. 317; 1 Harper & James, Law of Torts [1956], § 8.11, p. 647; Prosser, Law of Torts [2d ed., 1955], p. 675; Eversley, Domestic Relations [4th ed., 1926], p. 571; McCurdy, Torts Between Persons in Domestic Relation, 43 Harv. L. Rev. 1030, 1057.) Indeed, the books are filled with cases in which children have litigated with their parents over contracts, wills, inheritances and settlements. If a child may sue its father because of a broken contract, why, it has been asked, may he not sue him because of a broken leg? As the high court of Ohio put it (Signs v. Signs, 156 Ohio St. 566, 576), “It seems absurd to say that it is legal and proper for an unemancipated child to bring an action against his parent con *477 cerning the child’s property rights yet to be utterly without redress with reference to injury to his person.” And, the court continued, “ It is difficult to understand by what legerdemain of reason, logic or law such a situation can exist or how it can be said that domestic harmony would be undisturbed in one case and be upset in the other.”
It is likewise difficult to understand the other qualifications to the rule of parental immunity. Thus, there is no doubt today that an unemancipated minor may maintain an action for personal injuries willfully or intentionally inflicted. (See Cannon v. Cannon, 287 N. Y. 427, 429, supra; Siembab v. Siembab, 202 Misc. 1053; Nudd v. Matsouhas, 7 Ill. 2d 608; Mahnke v. Moore, 197 Md. 61; see, also, Prosser, Law of Torts [2d ed., 1955], p. 677.)
In addition, a child may actually, albeit indirectly, obtain redress from his parent for personal injuries resulting from an automobile accident if the child can find and sue a third person who in turn transfers his liability to the parent. A common case of this sort is one in which the father inflicts the injury while driving a vehicle in the course of his employment. The child recovers from his father’s employer ' and thereupon the latter obtains indemnity from the father in the full amount of the child’s recovery. (See Chase v. New Haven Waste Material Corp., 111 Conn. 377; Briggs v. City of Philadelphia, 112 Pa. Super. Ct. 50; cf. Schubert v. Schubert Wagon Co., 249 N. Y. 253, 257 [wife permitted recovery against husband’s employer].)
And, finally, an infant may sue his parent directly for personal injuries caused by the father’s careless operation of a car, provided only that it was being used in connection with the father’s business. (See Dunlap v. Dunlap, 84 N. H. 352; Signs v. Signs, 156 Ohio St. 566, supra; Worrell v. Worrell, 174 Va. 11; Borst v. Borst, 41 Wn. 2d 642; Lusk v. Lusk, 113 W. Va. 17.)
A father who cripples his child through reckless management of his car must respond in damages if the child is 21 and, as I have stated, I cannot believe that the peace of family life requires that the cripple go through life unaided by our law if he was hurt while under age. Nor can I believe that there will be a mad rush by children to extract money from their parents if *478 once the barriers are down. The family life itself, the life to be preserved in all its communal solidarity, it seems to me, supplies the answer. Those parents who are worthy of affection will make provision for the crippled child to the extent of their ability without the spur of legal process. The child will be unwilling to sue, will have no need or thought to sue. What is right will be done, and it will be done out of a love that is stronger than the law. There may be some parents who are selfish or indifferent or cruel; if they turn the crippled child adrift when his minority is over, he will be a drag upon society and a burden to himself. We should say that they may not do so with impunity. There are other parents who, though willing, may be helpless. We should hold that the child is not to be denied the benefit of insurance that would be available for a stranger.
It is not too much to say that the broad and numerous qualifications and exceptions to the family immunity doctrine have almost swallowed the rule. (See Hastings v. Hastings, 33 N. J. 247, 260-261, per Jacobs, J., dissenting, supra.) It is quite likely that this came about when the realization dawned that, when a child sues a parent, family harmony must already be at so low an ebb that it is grotesque to deny the child a remedy in the name of preserving that harmony. So far as the related argument that parental authority must be preserved by denying the child his right of action, I fail to see its applicability to a case such as the one before us. (See, e.g., Borst v. Borst, 41 Wn. 2d 642, 651, supra.) Surely, causing a child harm by negligent operation or maintenance of an automobile involves no attribute of parental control or filial obedience.[2] In short, the *479 public policy rationale for the immunity is spurious, whether tested by precedent or by reason.
New York now requires automobile liability insurance. I recognize that the presence of insurance does not create liability but, since it was fear that domestic peace and tranquility would be destroyed and the family disrupted which gave rise to adoption of the family immunity doctrine, its existence is a factor to be taken into account in considering whether or not the doctrine should be perpetuated. (See James and Thornton, The Impact of Insurance on the Law of Torts, 15 Law & Contemp. Prob. 431, 432; James, Accident Liability Reconsidered: The Impact of Liability Insurance, 57 Yale L. J. 549, 553; Note, Parent-Child Tort Liability and Compulsory Insurance, 33 St. John’s L. Rev. 310.) It has ushered in new tendencies and habits which may not be ignored in any estimate of values. Insurance against accidents, once solely a contract of indemnity, a means of reimbursement for the doer of the wrong, has lost much of its ancient quality and has in effect become insurance for the protection of the sufferer. The vast majority of accidents of this type are now defended by insurance companies in the names of nominal defendants. A method has been thus provided for minimizing loss by distributing the burden.
Certainly, where there is insurance, it becomes more difficult to justify the stock arguments advanced against recovery, to say that recognition of a right of action destroys our concept of the family unit. Gone is the fear of impoverishing the family, of impairing parental discipline or of disrupting domestic harmony. The child’s suit, if successful, will provide a fund to care for its injuries which might otherwise be unavailable. Far from upsetting family ties, the suit is actually an incident in the course of a family’s provident management of its affairs. (See, e.g., Dunlap v. Dunlap, 84 N. H. 352, 368, supra.)
The real reasons for the persistence of the doctrine must be sought elsewhere. It is said that to recognize a right of action in the child would invite an unseemly antimony between the law within the family and the law without, and that there is something indecent in the spectacle of a child suing his father, with his mother as guardian ad litem. But, as I have already shown, the law suffers many such “ spectacles ” under the numerous exceptions to the family immunity doctrine.
*480 Since the insurer is the real defendant, it has been said that there is danger of fraud and collusion between parent and child. One may not, of course, deny the hazard, but such a danger, being present in all liability insurance cases, furnishes reason not for denial of a cause of action, but for added caution on the part of court and jury in examining and assessing the facts. The danger is precisely the same when the injury is to a child who has attained 21 or to a brother or sister or, to a less degree, to a friend. In Rozell v. Rozell (281 N. Y. 106), this court actually rejected just such an argument when it upheld the right of a 12-year-old youngster to sue his 16-year-old sister who had injured him while driving an automobile covered by liability insurance (p. 113): “ No warrant is found for any.prediction that brothers and sisters will flock into the courts on fictitious claims through mere judicial recognition of the right of one to sue the other in personal injury cases. Common honesty inherent in the family unit presents an effective barrier. If it should appear that there is any foundation for the suggestion, a means of protection may be found in diligence on the part of the insurance carriers to ferret out and expose the fictitious claims and reliance may be placed on our courts and juries to detect and prevent a fraud.”
The decision to be made herein has little, if anything, to do with a case where the child is injured in the kitchen or in some other room making up the family establishment. There may be injustice, as well as difficulty, in applying the standardized duty of the reasonable man in such a situation. Heed, it may well be, must be given to excuses to which the law declines to listen when the victim is a business visitor. The house or the apartment may be out of order or in need of repair, but, there is force to the query, what is the father to do if there is no money to repair it? It may be unsanitary and in poor condition, but it is futile to seek a better one when it is beyond the father’s financial ability to pay the higher rent. Those who share the family life must of necessity share its fortunes, its privations and hardships, as well as its gains. In ancient times, “ the Family, in fact, was a Corporation; and [the pater familias] was its representative or, we might almost say, its Public officer.” (Maine, Ancient Law [1st Amer. ed., 1864], p. 178.) Something of the same concept is present today. In the ordering of the home, the father *481 is still the judge, or, better perhaps, the king, not liable for error while he acts in good faith, without malice or indifference.
I have remarked these problems but to exclude them. What concerns us now is not the parent’s liability to his infant child for failing to put the house in order. The question to be answered is that of the parent’s liability for negligence, both personal and active, negligence which may amount to crime (cf. People v. Angelo, 246 N. Y. 451), and which, if shown to one not a child, even a guest or a licensee, would be at least a civil wrong. The rule is to cover cases where a father runs his child down, or spills him into the street, by careless driving of his car, or otherwise fails to properly maintain the car, and thereby cripples him for life. Nothing in the structure of the family as established by decision or tradition requires us to say of such conduct that it is to be classified as lawful, as something other than a wrong. If it is a wrong, should it, I repeat the question, be one without a remedy?
In answer, it is urged that, if there is to be a remedy, it must be given by the Legislature, if there is to be change, it may not be effected by the courts. This court has heard such arguments before and has answered them by saying that, where the rule is court made, it may be court modified if reason and a right sense of justice recommend it. (See Greenberg v. Lorenz, 9 N Y 2d 195; People v. Spitaleri, 9 N Y 2d 168; Bing v. Thunig, 2 N Y 2d 656; Woods v. Lancet, 303 N. Y. 349.) Such, in my opinion, is the case before us, and we should not be deterred in pursuing such a course by a fear that decision in this case will be binding in cases—which may never eventuate—involving household accidents. Although, as I have already stated, insurance does not create liability where none exists, its presence in automobile accident cases furnishes a good reason for refusing to persist in honoring a doctrine long after the conditions which called it into being have passed.
The problem, in short, comes to this: A child is seriously injured by his father’s careless operation or maintenance of his automobile. As the law now stands, the judgment recovered against the parent is more than likely, in the vast majority of cases, to be paid by an insurer. If the crippled child may have the benefit of this insurance, a fund will be supplied the family to provide for him. If the fund is cut off, cripple as well as *482 parent will have to stagger beneath the load. To tell them that the pains must be endured for the peace and welfare of the family is something of a mockery.
I would reverse the summary judgment dismissing the complaint and give the child his day in court.
Judges Dye, Froessel, Van Voorhis, Burke and Foster concur with Chief Judge Desmond; Judge Fuld dissents in a separate opinion.
Judgment affirmed.

. And, I would add that, although the rule has been accepted by almost every court which has considered the problem, it has been “ universally condemned in the thoughtful professorial and student writings on the subject.” (Hastings v. Hastings, 33 N. J. 247, 254, per Jacobs, J., dissenting.) Many of these writings are listed in Judge Jacobs’ opinion (33 N. J., at pp. 254-255).

. Although Borst v. Borst (41 Wn. 2d 642, supra) differs somewhat from the present ease in that the father’s automobile was being operated in connection with his business, the court’s statement is most pertinent (p. 651): “A second reason frequently advanced in support of the immunity rule is that actions by children against their parents tend to undermine parental authority and discipline. [Cases cited.] The field of parental control and discipline covers such matters as the maintenance of the home, chastisement, and no doubt other activities which need not here be delineated. But when the parental activity whereby the child was injured has nothing to do with parental control and discipline, a suit involving such activity cannot be said to undermine those sinews of family life.”