TERAMANO, A MINOR, APPELLANT, *v.* TERAMANO, APPELLEE.

[Cite as Teramano v. Teramano, 1 Ohio App. 2d 504.]

(No. 27134—Decided March 18, 1965.)

*Mr. Rod R. Mastandrea,* for appellant.
*Messrs. Hermann, Rhoa & Cummins,* for appellee.

WASSERMAN, J. Plaintiff, an unemancipated child eleven years of age, was struck and injured by his father's willful and negligent operation of his automobile in his driveway. The plaintiff alleges in his petition that his father had an artificial leg and had to drive to work; that on the day of his injury his father had been drinking; that the child, one of several, used the rear exit of the home constantly, which exit was built in such a way that it led into the driveway and was in fact both a driveway and an exit from the home; and that this fact was well known to the defendant. It is alleged further that on the day in question, and while under the influence of intoxicating liquor, the defendant drove his car at an unusually high rate of speed into the driveway and passed the rear exit from which the plaintiff had just emerged, striking the boy, causing severe and permanent injury to his right leg and other parts of his body.

At the close of the plaintiff's opening statement, the defendant made a motion for judgment on the pleadings and opening statement, which was granted, upon the theory that in Ohio an unemancipated minor may not sue his parent in tort for injury and damage suffered because of such parent's negligence.

This appeal is from the judgment of the court entered after

defendant's motion for a directed verdict at the conclusion of plaintiff's opening statement.

The question of whether an unemancipated child can recover against his parent for a personal tort was first decided in this country in *Hewlett* v. *George, Exr.*, 68 Miss. 703, 9 So. 885, 13 L. R. A. 682. In that case a mother wrongfully caused her minor child to be confined in a hospital for the insane. The court without citing any authority pronounced the now almost universally recognized rule that an unemancipated minor child may not sue his parent in tort for a personal injury on the grounds that to allow such an action would be against public policy. Over the years that case has been cited and its rule of law followed by every state in this country.

It has only been in recent years that criticism of the rule in *Hewlett* v. *George, supra,* has come to the foreground. The arguments for and against the many aspects of public policy have been discussed in so many cases that it would be mere surplusage to repeat them at this time. Each of the arguments is discussed and criticized at length in *Borst* v. *Borst*, 41 Wash. 2d 642, 251 P. 2d 149.

The first departure from the strict nonliability rule emerged in cases where the parent injures his child while in the scope of his employment or vocation. See *Worrell* v. *Worrell*, 174 Va. 11, 4 S. E. 2d 343; *Dunlap* v. *Dunlap*, 84 N. H. 352, 150 A. 905, 71 A. L. R. 1055; *Lusk* v. *Lusk*, 113 W. Va. 17, 166 S. E. 538; *Signs, a Minor,* v. *Signs*, 156 Ohio St. 566. In the above decisions, and in many others, recovery has been allowed in favor of the unemancipated minor child. In fact, recovery in circumstances where the child has been injured while the parent is engaged in his employment has become quite common.

There is a trend in recent decisions of state courts of last resort to depart even further from the general rule of nonliability where the injury sustained by an unemancipated minor child is the result of a willful or malicious tort. It is these decisions which particularly concern the case in question. In *Cowgill* v. *Boock*, 189 Ore. 282, 218 P. 2d 445, 19 A. L. R. 2d 405, while allowing recovery by the child for willful or wanton acts by the parent, the court said on page 293:

"In the instant case, the father in driving the automobile while drunk was engaged in an unlawful act. We are concerned

here with a case involving more than ordinary or gross negligence. It is one of wilful misconduct of the father whose wrongful act resulted in the untimely death of his young son. The wrongful conduct of the father in driving the automobile while drunk is in no way referable to his duties as a parent. Indeed, in this case there was a clear abandonment of the parental duty.''

In the above case, the father had been drinking heavily and drove toward home with his young son who had expressed a desire in front of witnesses that he did not want to accompany his father in the latter's drunken condition. The court held that the father, by driving in such condition, had abandoned his parental duty.

In still another recent case the court held the parent liable where the parent had been drinking. *Leggett, an Infant,* v. *Leggett*, 216 N. Y. S. 2d 781. In that case the mother of two unemancipated minors, while driving under the influence of alcohol, fell asleep at the wheel and hit a tree at an excessive rate of speed injuring the two minor children who were with her. The minors alleged that their mother was guilty of willful and wanton acts toward them. The court in its opinion on page 782 cited recent New York cases and foreign state decisions and said:

''* * * In those cases motions to dismiss the complaints, almost identical with the one at bar, were denied on the theory that driving while intoxicated was gross negligence of a character equivalent to *animus injuriande.* Thus the question here is whether, without active or affirmative intention to injure the child, liability can be predicated on a constructive intention based on irresponsible, thoughtless and reckless conduct.''

The court denied the motion to dismiss saying: ''There is authority sufficient for the complaint now considered and the motion to dismiss it is denied.''

In *Borst* v. *Borst*, 41 Wash. 2d 642, the court said on page 647:

''* * * It should be mentioned, however, that where the tort of the parent is intentional or there is wilful misconduct, the recent decisions uniformly allow the child a cause of action. * * *''

See *Cowgill* v. *Boock*, 189 Ore. 282; *Mahnke* v. *Moore, Exrx.,*

197 Md. 61, 77 A. 2d 923; *Wright* v. *Wright*, 85 Ga. App. 721, 70 S. E. 2d 152.

From the above discussion it can clearly be seen that the different states are deviating from the hard and fast rule of nonliability laid down in *Hewlett* v. *George*, 68 Miss. 703. We must now take a close look at the state of the law on this subject in Ohio. It cannot be denied that Ohio followed the lead of the other states in adhering to the rule of strict nonliability until recent years. However, in 1952 this state joined the growing list of minority holdings with the pronouncement of the Supreme Court of Ohio in *Signs, a Minor,* v. *Signs,* 156 Ohio St. 566, wherein it was said in the syllabus that:

"A parent in his business or vocational capacity is not immune from a personal-tort action by his unemancipated minor child."

It will be argued that that decision has no bearing on the issue in the present case.

After closely examining the language in that case we feel otherwise. The facts in that case disclosed that the defendant father was a member of a partnership engaged in automotive transportation. For a considerable time the defendant partnership operated a gasoline pump on the premises of the plaintiff's mother. Through negligent operation of that pump the plaintiff, a minor child, and another were injured. The defendants prayed for an order dismissing the petition and for judgment in their favor on the ground that the father of one of the injured children was a member of the partnership and, hence, the action was not maintainable. The court held otherwise and on page 574 quoted Prosser on Torts 905, Section 99:

" 'In matters affecting property, causes of action seem always to have been freely recognized, on the part of either the parent or the child. There is good reason to believe that the English law would permit actions for personal torts as well, subject always to the parent's privilege to enforce reasonable discipline against the child. But beginning with a Mississippi case in 1891 [*Hewlett* v. *George, Exr., supra*], which cited no authorities, the bulk of the American courts have refused to allow actions between parent and minor child for personal torts, whether they are intentional or negligent in character. For reasons that are not at all apparent, however, the action some-

times has been permitted against one who is not a parent but merely stands in the place of a parent, such as another relative who has custody of the child.' ''

The court went on to say, beginning at page 575:

"In these modern times, with the advent of the motor vehicle and the growing complications of business and industry and where in an industrial age we are living under changed conditions, it would seem a fantastic anomaly that in a case where two minor children were negligently injured in the operation of a business, one of them, a stranger, could recover compensation for his injuries and the other one, a minor child of the owner of the business, could not.

''* * *

"It seems absurd to say that it is legal and proper for an unemancipated child to bring an action against his parent concerning the child's property rights yet to be utterly without redress with reference to injury to his person.

"It is difficult to understand by what legerdemain of reason, logic or law such a situation can exist or how it can be said that domestic harmony would be undisturbed in one case and be upset in the other.

"It has been suggested that if tort actions were maintainable by an unemancipated child against his parent there would be danger of collusion or fraud, particularly where a liability insurance company was involved.  That may be true.  But there was the same situation with reference to the liability of the operator of an automobile to his guest in the automobile. However, the courts of this state always recognized that liability until the legislative branch of the government enacted the guest statue, now Section 6308-6, General Code, which forbids a nonpaying guest in an automobile to maintain an action in tort against the owner or operator thereof in the absence of wilful or wanton misconduct of such owner or operator.

"Assuredly, if the legislative branch of the government should be of the opinion that the danger of collusion or fraud is an evil which outweighs the desirability of the right of redress of an unemancipated child for a tort committed by his parent it could abolish that right by legislative enactment.  So far as liability insurance companies are concerned, if they should become fearful of the danger of collusion or fraud, they could pro-

vide in their policies that there be no coverage in reference to an action between such unemancipated child and his parent.''

Understandably, the court in the *Signs case* was limited to the fact situation involved. Necessarily, the court would not rule on the question of willful or wanton misconduct when it was not an issue. However, there is nothing, in our opinion, in the case which would disallow recovery by a minor for the willful and wanton misconduct of his parent. To the contrary, the general content, reasoning, and citations of the opinion would lead us to believe that the court would allow such an action. The court in the *Signs case* says that it would be absurd to allow recovery by a stranger and deny recovery to another simply because the latter is a minor child of the owner of the business. This reasoning would likewise apply in the instant case. It would be equally as absurd to allow recovery if in the instant case a neighbor child had been hit by the defendant and not allow recovery to the defendant's own child simply because he, the wrongdoer, is the father of that child, the defendant being aware of the fact that both his family and neighbors were in the habit of using the back door for ingress and egress.

We must mention that this court is well aware of the fact that parents must be given a certain amount of control over their offspring. Society demands discipline and certain standards of conduct. If in the performance of the ordinary functions of a parent a child is injured by the unintentional negligence of a parent, the rule of nonliability is well taken. It is only when a parent, in his role as parent and guardian, disregards the best interests of the child and proceeds to act in a way that is repugnant both to the family and society that this court becomes concerned.

The common law is not static; it must change for the benefit of mankind when the need for a change presents itself. This is the beauty of the law. It must be ready to control the actions of men in their immediate time and age. A law which is outdated gives justice to no one.

In the instant case, to hold that driving in a careless, reckless manner while under the influence of intoxicating liquors is within the scope of parental authority and as a parent there is no liability to one's own children would violate the very conscience of the law. Public policy does not demand such a hold-

ing. We submit that the very thing (public policy) which affords nonliability has been violated by the parent in acting contrary to the rules of society. It is against public policy to drive while under the influence of intoxicating liquor.

It is presumed that a person intends the ordinary consequences of his voluntary act. The defendant father knew or ought to have known of the danger in driving while under the influence of alcohol into his driveway at a high rate of speed and past an exit which, as he was well aware, was used by family and friends for ingress and egress to and from the dwelling house. It is well known that "willful misconduct" depends upon the facts of a particular case and necessarily involves deliberate, intentional or wanton conduct in doing or omitting to do something, with knowledge or appreciation of the fact that danger is likely to result therefrom.

However repugnant it may seem that a minor child should sue his own parent for willful and wanton acts toward the child, it is equally repugnant that a child injured by his parent's negligent acts, perhaps maimed for life, should have no redress for the damages he has suffered.

Accordingly, we find that the evidence in the instant case states a cause of action and that the court erred in granting motion for judgment on the pleadings and opening statement.

The judgment is reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

SILBERT and SKEEL, JJ., concur.