[No. 34895. Department Two. June 18, 1959.]

L. L. BUCHANAN et al., *Respondents,* v. HARVEY HAMMOND et al., *Appellants.*[1]

[1]Reported in 340 P. (2d) 556.

*Gavin, Robinson & Kendrick* and *Robert R. Redman*, for appellants.

*Hawkins & Loy*, for respondents.

FOSTER, J.—This is an appeal from a judgment slightly in excess of ten thousand dollars in an action for the breach of a twenty-year lease (from April 13, 1956 to April 13, 1976) of respondents' gravel plant to the appellant Hammond, agent for the corporate defendant Valley Cement Company.

While there are eighteen separate assignments of error, only four questions are presented. The first is the right to damage for failure to operate the plant; the second is the item of damage for loss of fish; the third is the conversion of a check in the sum of $378.79; and the fourth is for the damage sustained in stripping the topsoil.

The terms of the contract supplemental to the lease, so far as material, are:

"G. With respect to both the agreement and the lease between the parties, it is understood and agreed that the Second Party or his assigns will use and operate the properties in a good and workmanlike manner and will not commit waste or strip thereof, and it is agreed that the Second Party or his assigns shall continue to operate said properties in such a good and workmanlike manner so long as it is feasible so to do within the judgment of said Second Party or his assigns."

The complaint alleged a breach of the lease in failing to operate the plant, on which item the jury found for the respondents and fixed the damage at $7,327.70.

The assignment is that the court erred in instructing that the jury could find for the respondents if the appellants refused without reason, arbitrarily, fraudulently, or in bad

faith to operate the plant, and that, on the other hand, the court erred in refusing to instruct that the appellants had an absolute right, under the quoted provision of the lease, to refuse to operate the plant.

On the other hand, respondents contend that the appellants' action in this respect was a breach of faith and that they did not, as the quoted provision of the lease requires, make a bona fide effort to operate the plant.

It appears from the evidence that, at the time of the execution of the lease in question, the appellants then had a contract to purchase all of their requirements of sand and gravel from the DeAtley Paving and Crushing Company. Moreover, there was evidence that, although the plant could be operated profitably, appellants operated it only when the DeAtley plant was out of production, and not otherwise.

In a memorandum opinion prepared with painstaking care, the trial judge disposed of the appellants' contention that they had the absolute right to refuse to operate the plant. Judge Barnett said:

"It is contended by the defendants that the above paragraph vests in the defendants the right without reservation to operate the properties only at such times as the defendants may desire, and that their discretion or judgment is not to be questioned. However, the court is not inclined to adopt this interpretation of the respective agreements, especially in view of the fact that the respective instruments involved in this case provide that the plaintiffs shall be paid a percentage of the gravel removed and sold, and also in view of the fact that the paragraph hereinabove quoted provides that the properties will be used and operated in a good and workmanlike manner. The construction contended for by learned counsel is not reasonable. Unless the contracts by their terms expressly vest in the defendants the absolute right of determining when they shall operate the properties, the court should not adopt such a construction. The word feasible as used in the paragraph above means 'capable of being done, effected or accomplished.' The American College Dictionary—1952. There is nothing in the language of the contract and in its context to indicate an intention of the parties to confer upon the the defendants a right to refuse to operate the properties and extract gravel therefrom without reason. Undoubtedly the contracts vest some dis-

cretion in the defendants. It is the defendants' judgment that is called into existence, and this judgment excludes arbitrariness, bad faith, fraud, caprice or whim, and the alternative of such discretion is to assume in the defendants the power of closing the business itself without reason, which, of course, would be to the detriment of the lessor.
. . .

"In the case at bar, the jury could find from the evidence that the gravel could be sold at a profit, and the jury could find that the defendants had contracted to buy all of their gravel from another concern, and that the plant, after being shut down, was operated when the property of the other concern was flooded and could not furnish gravel and the jury could find that most of the gravel sold, when operated by the defendants, was to The Valley Cement Co., Inc. The court is constrained to the view that there is sufficient evidence in the record, if believed, to justify a jury in making a finding that there was a breach of contract in this respect on the part of the defendants."

■ Appellants cite no authority in support of their contention that they had the absolute right to refuse to operate the plant. We find the trial court's disposition of this problem correct.

Appellants argue that there is not sufficient evidence as to the value of the fish loss and that the court erroneously admitted evidence as to the market value of the fish.

The prior operation of the property developed a large pit which filled with water. The respondents conceived the idea of stocking the resulting pond with bass which they planned to raise commercially. For this purpose they purchased fish on two separate occasions at a total cost of $278. They estimated the number of fish from thirty to forty thousand. They testified that they had fed and cared for them over a period of time at a cost in excess of $1,800.

The first argument in support of this assignment is that the respondents' evidence is not sufficiently precise to sustain the verdict.

■■ There was evidence that the appellants opened a drain to the fish pond. There was testimony of eyewitnesses to the escape of fish. The appellants' wrong in opening the drain and permitting the fish to escape is hardly

open to dispute. Under those circumstances, the appellants are not to be immunized for their wrongful act because perchance the respondents are unable to prove with mathematical precision the dollar value of their loss. But the verdict was well within the proofs. We recently examined this problem in *Wenzler & Ward Plumbing & Heating Co. v. Sellen*, 53 Wn. (2d) 96, 330 P. (2d) 1068. The applicable rule was stated by the United States supreme court in *Bigelow v. RKO Radio Pictures, Inc.*, 327 U. S. 251, 90 L. Ed. 652, 66 S. Ct. 574, as follows:

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created. . . .

" 'The constant tendency of the courts is to find some way in which damages can be awarded where a wrong has been done. Difficulty of ascertainment is no longer confused with right of recovery' for a proven invasion of the plaintiff's rights. . . ."

The recent cases elsewhere are in accord.[2]

■ The second phase of the argument is that there was no proof of market value. The court, however, instructed the jury that, lacking satisfactory evidence of market value, then it might find, in the event it was proved that the loss of fish was due to the wrong of the appellants, on the actual value of the fish. Assuming therefore, that the appellants' argument is correct that there was no competent proof of the market value and that the court erroneously permitted incompetent evidence upon this item of damage, the verdict was obviously upon the actual value which was well within the range of the proof and the error, if any, was without prejudice.

Before the property was leased to appellants, the respondents operated the plant under the assumed name of Superior Concrete Company, in the course of which busi-

[2]*Stepovich v. Kupoff*, 261 F. (2d) 693; *Noerr Motor Freight, Inc. v. Eastern R. Presidents Conference*, 166 F. Supp. 163; *Harris Mfg. Co. v. Williams*, 164 F. Supp. 626; *Israel v. Campbell*, 163 Cal. App (2d) 806, 330 P. (2d) 83; *Margolis v. Teplin*, 163 Cal. App. (2d) 526, 329 P. (2d) 535; *Avery v. City of Lyons*, 183 Kan. 611, 331 P. (2d) 906; *Hedderman v. Robert Hall*, 145 Conn. 410, 144 A. (2d) 60.

ness they sold materials to the Modern Home Builders in the sum of $378.79. Respondents granted the appellants the right to use the name Superior Concrete Company. Prior to the occasion in question, the respondents notified the appellants that the Modern Home Builders would send a check to the Superior Concrete Company for the amount mentioned. Appellants offered evidence that the Modern Home Builders had also purchased materials from them for which various sums were owing. When the check in question arrived, it was cashed by the appellants, less ninety dollars which was given to one Betheley.

The court instructed the jury that, if it found the respondents had notified appellant Hammond in advance respecting the check and with such knowledge the appellants cashed the check, the respondents were entitled to a verdict for the full amount thereof. We find no error in the instruction. The matter was a dispute of fact on which the jury's verdict is conclusive.

The final item relates to the stripping of the topsoil. The agreements in evidence prohibited stripping and wasting. The court instructed that, in the ordinary operation of the gravel plant, the appellants were entitled to remove the overburden or topsoil in order to expose the gravel. The proofs are that the topsoil was taken from an area far distant from the location of the gravel operation. Appellants' claim is that the area involved was within a projected highway condemnation by the state and that it was only good business to remove the valuable topsoil in advance thereof. The jury's verdict on this item was $747. The court instructed that under the contract the appellants were not entitled to strip the topsoil or to remove it unless such was necessary in the reasonable operation of the property as a sand and gravel enterprise, and that, if topsoil was removed otherwise, the respondents were entitled to the fair market value of the topsoil less the royalties paid. The court specifically admonished the jury, however, that the appellants could remove the topsoil or overburden reasonably ahead

of their sand and gravel operations. We think the matter was fairly submitted to the jury.

Affirmed.

WEAVER, C. J., MALLERY, HILL, and ROSELLINI, JJ., concur.