[No. 46703.   En Banc.   July 31, 1980.]

ALAN L. LUNDGREN, ET AL, *Respondents,* v. WHITNEY'S INC., *Appellant.*

*Betts, Patterson & Mines,* by *William P. Fite,* for appellant.

*Paul L. Stritmatter,* for respondents.

*Daniel F. Sullivan, Ronald Bland, Frank Stubbs,* and *Donovan Flora* on behalf of Washington Trial Lawyers Association, amici curiae.

WILLIAMS, J.—This case poses the question whether Washington permits a wife to claim damages for loss of consortium when her husband is injured by the negligence of a third party. The Court of Appeals determined that the issue was one of broad public import and certified the case to us. RCW 2.06.030(e). We hold that a married woman may bring such an action and affirm the judgment of the trial court.

Alan L. Lundgren was injured when he failed to negotiate a turn on a freeway exit and his truck left the roadway and rolled over. Respondents Alan L. Lundgren, Kathleen Lundgren, and Bay Fish Company, Inc., subsequently brought an action against appellant Whitney's, Inc., a garage and automobile dealership in Montesano, Washington, alleging negligence in the repair of the truck braking system and a resultant brake failure which caused the accident. The jury returned a verdict in favor of respondents on this issue.

In the accident Lundgren suffered a fracture to his spine, which required the surgical procedures known as laminectomy, decompression of the neural canal, and fusion. He

sustained permanent injury to the portion of the spinal cord which controls his left foot. The neurological surgeon testified it was likely that Lundgren would experience permanent "foot drop" and back pain.

At the time of the accident, Lundgren was half owner of the Bay Fish Company of Westport, Washington, a fish brokerage business engaged in the handling, storing, and transporting of fish to processing plants in other locations. He first returned to work in December 1976, but persistent back pain and weakness in his foot prevented performance of his usual duties. At trial, he testified he no longer did "any of the physical work" connected with the business. In January 1977, approximately 6 months after the accident, he bought out his partner's interest and became sole owner of Bay Fish Company.

Lundgren's wife, Kathleen Lundgren, testified at trial that the couple's social life has been altered by the accident. They no longer go bowling or dancing. The injury has also limited the activities of the family, which includes two children. They have sold the boat which the family used for recreational fishing because Lundgren cannot manage it. He cannot go hunting or hiking; walking on the beach is likewise difficult. There was also testimony that he is unable to do many of the household tasks he previously performed: cleaning gutters, painting the house, repairing the roof.

The jury found that appellant's negligence was the proximate cause of Lundgren's injury and awarded the following damages: (1) to Lundgren, $155,000; (2) to Kathleen Lundgren, $25,000 for loss of consortium; and (3) to Bay Fish Company, $18,000. Appellant appealed both the award for loss of consortium and that portion of the award to Bay Fish Company which represents lost profits.

## I

This court has long allowed damages for loss of consortium under the wrongful death statute, RCW 4.20.020. *Hinton v. Carmody*, 182 Wash. 123, 130–31, 45 P.2d 32 (1935) (jury could consider such elements of the surviving

husband's damages as "loss of love, affection, care, services, companionship, society and consortium, if any, sustained by him by reason of the death of his wife; . . ."). The same damages were permitted to be argued on behalf of a surviving wife in *Davis v. North Coast Transp. Co.*, 160 Wash. 576, 583–84, 295 P. 921 (1931).

The husband's right to damages for loss of consortium was recognized in two early Washington cases in which the courts permitted damages to a husband for loss of an injured wife's "services" in the household. *Hawkins v. Front St. Cable Ry.*, 3 Wash. 592, 595, 28 P. 1021 (1892); *Zolawenski v. Aberdeen*, 72 Wash. 95, 97, 129 P. 1090 (1913). But in *Ash v. S.S. Mullen, Inc.*, 43 Wn.2d 345, 261 P.2d 118 (1953), the court denied loss of consortium damages to a wife whose husband had been injured in the course of his employment. The holding in *Ash* rested on two independent rationales: (1) that a wife had no right to such damages at common law, and (2) that any change in the prevailing rule should be made by the legislature.[1]

It is no exaggeration to state that the law has changed dramatically since *Ash* was decided. Beginning in 1950, with the case of *Hitaffer v. Argonne Co.*, 183 F.2d 811 (D.C. Cir.), *cert. denied*, 340 U.S. 852, 95 L. Ed. 624, 71 S. Ct. 80 (1950), the great majority of American jurisdictions have recognized the wife's right to damages for loss of consortium due to the injury of her spouse by the negligent acts of a third party. *See* Annot., *Wife's Right of Action for Loss of Consortium*, 36 A.L.R.3d 900 (1971), and cases cited therein; 3 Restatement (Second) of Torts § 693, comment *d* (1976); W. Prosser, *Torts* 894–96 (4th ed. 1971); Clark, *The Wife's Action for Negligent Impairment of Consortium*, 3 Fam. L.Q. 197 (1969). It is apparent that the first rationale for the decision in *Ash* no longer exists.

---

[1] *Ash* also rested its decision on the ground that loss of consortium damages are in any event barred by the workers' compensation statute, RCW 51.04.010, an issue not present in this case. *Cf. Thompson v. Lewis County*, 92 Wn.2d 204, 595 P.2d 541 (1979).

■ As to the second rationale, courts have generally rejected the argument that the abrogation of the common law rule on loss of consortium should be left to the legislature. As the California Supreme Court explained in its case extending the right of action to wives, this contention is in effect

a request that courts abdicate their responsibility for the upkeep of the common law. . . .

. . .

. . . "The nature of the common law requires that each time a rule of law is applied, it be carefully scrutinized to make sure that the conditions and needs of the times have not so changed as to make further application of it the instrument of injustice. . . . Although the Legislature may of course speak to the subject, in the common law system the primary instruments of this evolution are the courts, adjudicating on a regular basis the rich variety of individual cases brought before them.

(Citations omitted.) *Rodriguez v. Bethlehem Steel Corp.,* 12 Cal. 3d 382, 393–94, 525 P.2d 669, 115 Cal. Rptr. 765 (1974).

Indeed, we have often discharged our duty to reassess the common law and alter it where justice requires. *Grimsby v. Samson,* 85 Wn.2d 52, 59–60, 530 P.2d 291, 77 A.L.R.3d 436 (1975) (adopting for the first time in Washington the Restatement (Second) of Torts § 46 on the tort of outrage); *Borst v. Borst,* 41 Wn.2d 642, 657, 251 P.2d 149 (1952) (limiting the doctrine of parent–child immunity and rejecting an argument that the change of rule was a legislative, not judicial, function). In *Freehe v. Freehe,* 81 Wn.2d 183, 189, 500 P.2d 771 (1972), we abolished the old rule of interspousal tort immunity and stated in response to the contention that any change should be a matter for the legislature:

This argument ignores the fact that the rule is not one made or sanctioned by the legislature, but rather is one that depends for its origins and continued viability upon the common law. In these circumstances, it is proper to echo the words quoted in *Borst v. Borst, supra* at 657:

"Legislative action there could, of course, be, but we abdicate our own function, in a field peculiarly nonstatutory, when we refuse to reconsider an old and unsatisfactory court–made rule." [*Woods v. Lancet,* 303 N.Y. 349, 102 N.E.2d 691.]

■ Not only are the original rationales underlying the *Ash* decision no longer applicable, we can find no rational basis for distinguishing between husbands and wives where a claim of damages from loss of consortium is made. As one court has explained when faced with this precise issue:

If a statute were to affirmatively create such a right in a husband and yet deny it to a wife, such a classification based on sex alone would violate Article I of the Constitution of Ohio and the Fourteenth Amendment to the Constitution of the United States. The *common–law* distinction between husband and wife in regard to consortium is equally based upon an unreasonable, discredited concept of the subservience of the wife to her husband. The courts should not perpetuate in the common law a discrimination that could not constitutionally be created by statute.

*Leffler v. Wiley,* 15 Ohio App. 2d 67, 69, 239 N.E.2d 235 (1968). It is likewise apparent to us that the judicial classification by sex established by this court in 1953 violates the equal protection clause of the Fourteenth Amendment and Washington's equal rights amendment, Const. art. 31, § 1. *Cf. Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974). Accordingly, *Ash* is overruled to the extent it conflicts with this opinion, and a cause of action is hereby extended to the wife for damages for the loss of her husband's consortium due to the negligence of a third party.

■ Appellant next argues that, assuming Kathleen Lundgren may press her claim for damages, the jury award of $25,000 was excessive and not supported by the evidence. We have reviewed the evidence and find it sufficient to support the amount awarded here. This court will not disturb an award of damages made by a jury if the amount is not so disproportionate as to indicate it resulted from pas-

sion or prejudice. *Cherberg v. Peoples Nat'l Bank,* 88 Wn.2d 595, 607, 564 P.2d 1137 (1977); *Rasor v. Retail Credit Co.,* 87 Wn.2d 516, 531, 554 P.2d 1041 (1976).

## II

Appellant contends that the trial court erred in awarding lost profits of $6,481.04 to Bay Fish Company (company). Conceding that lost profits are a compensable element of damages, appellant urges they are inappropriate here because respondents failed to present evidence either (1) that profits would have been realized but for the injury or (2) that there was a basis for determining the amount of loss with reasonable certainty.

The company's bookkeeper testified on lost profits. She computed the average number of tuna handled and freighted by the company for the years 1971 through 1978, excluding 1976, the year of Lundgren's injury. From the average figure she subtracted the number of fish handled in 1976, when Lundgren did not work from June to December, and found that the company handled 150,772 fewer pounds of fish in that year. The gross receipts to the company from handling and freighting were computed to be $.03 per pound for handling and $.0175 per pound for freight, resulting in a total dollar loss to the company of $7,159.29. Deducting expenses not incurred for wages to the driver, costs of fuel, and road taxes, she arrived at a net loss figure of $6,481.04.

The bookkeeper testified that it was Lundgren's responsibility to "set up the agreements and the consignees," to contact buyers, and to determine the appropriate market and price. The company was unable to locate someone to carry out these tasks, so it stopped handling tuna in the 1976 season.

Lost profits are a recoverable element of damages to the extent the evidence permits their estimation with reasonable certainty. *Lamphiear v. Skagit Corp.,* 6 Wn. App. 350, 361, 493 P.2d 1018 (1972). This court has stated:

A measuring stick, whereby damages may be assessed within the demarcation of reasonable certainty, is sometimes difficult to find. Plaintiff must produce the best evidence available and

". . . if it is sufficient to afford a reasonable basis for estimating his loss, he is not to be denied a substantial recovery because the amount of the damage is incapable of exact ascertainment. . . ." *Dunseath v. Hallauer,* [41 Wn.2d 895,] 902 [253 P.2d 408 (1953)].

See also *Buchanan v. Hammond,* 54 Wn. (2d) 354, 340 P. (2d) 556 [(1959)].

*Larsen v. Walton Plywood Co.,* 65 Wn.2d 1, 16, 390 P.2d 677 (1964). If a plaintiff has produced the best evidence available, and if the evidence affords a reasonable basis for estimating the loss, courts will not permit a wrongdoer to benefit from the difficulty of determining the dollar amount of loss. *Reefer Queen Co. v. Marine Constr. & Design Co.,* 73 Wn.2d 774, 781, 440 P.2d 448 (1968).

Appellant contends that the best evidence in the present case would be a showing of profit history, not gross receipts. Appellant cites *Adams v. Building Serv. Employees Local 6,* 197 Wash. 242, 84 P.2d 1021 (1938), for the rule that there must be a showing of past profits. In that case, however, the court found there was *no* testimony in the record relating to profits, but only a showing of reduction in gross receipts to respondent's nursery business. By contrast, the company, a fish brokerage business, made its entire profit from the handling and freighting of fish. Except for the expenses associated with freighting, all moneys received by the company per pound of fish was profit. Thus, the amount of profit to the company was directly related to the quantity of fish it was able to handle.

While "profit" may not be an accurate label for the company's loss, there is no dispute that it handled substantially fewer pounds of fish than it had for a 7–year period before and after Lundgren's injury. Had he not suffered the injury, the evidence is sufficient to show the company would have handled more fish and suffered less loss. The testimony of the company bookkeeper affords a reasonable basis for

estimating the loss. *Reefer Queen Co.,* at 781. The company is not to be denied a recovery because of the difficulty of arriving at an exact loss figure.

The judgment of the trial court is accordingly affirmed.

UTTER, C.J., ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., and LALLY, J. Pro Tem., concur.