**Dee Ann PEMBERTON, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Defendants.**

Civ. A. No. S92–0136(R).

United States District Court, S.D. Mississippi, S.D.

Oct. 13, 1992.

Ben Galloway, Gulfport, Miss., for plaintiff.

Harry R. Allen, Gulfport, Miss., for defendants.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This cause is before this Court on the Motion of the Plaintiff, Dee Ann Pemberton, for Partial Summary Judgment, and the Counter–Motion of the defendant, State Farm Mutual Insurance Company (hereinafter "State Farm"), for Summary Judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### FINDINGS OF FACTS

On or about October 28, 1989, the president of Pemberton Oil, Inc., Garlon Pemberton, his wife Dee Ann Pemberton, and his two children were injured in an automobile accident involving the Corporation's BMW and an uninsured motorist. At the time of the accident, State Farm Mutual Automobile Insurance Company had issued policies number 190–9676–D17–24A covering the BMW and number 24–98–4643–3 an umbrella or excess policy. Both policies were in effect at the time of the collision. The primary policy covering the BMW provided $100,000/300,000 and the umbrella or excess policy provided an additional $1,000,000 in uninsured motorist coverage. There were multiple stock holders of Pemberton Oil, Inc. at the time of the accident.

On August 31, 1990, Garlon and Dee Ann Pemberton entered into separate settlement agreements with State Farm executing releases for $75,000.00 and $200,000.00, respectively. At the time the releases were signed, Pemberton Oil, Inc. was exclusively owned by Garlon Pemberton. Plaintiff contends that such releases were made in individual capacity and not in corporate capacity. Defendant argues the releases were full and final thus barring future claims by the Pembertons or Pemberton Oil, Inc.

On January 9, 1992, Pemberton Oil, Inc., assigned all claims and rights, with respect to the two referenced policies, to Dee Ann Pemberton. This assignment was made two years after the Pemberton's separate releases were signed. On March 23, 1992, Dee Ann Pemberton, as assignee of Pemberton Oil, Inc., filed suit in the United States District Court asserting economic losses sustained by Pemberton Oil, Inc. as a result of Garlon Pemberton's injuries from the accident of October 28, 1989. The damages, allegedly caused by Garlon Pemberton's inability to work as Chief Executive Officer of Pemberton Oil, Inc. for one year, total $802,604.33. This figure is said to be reflected in the Corporation's tax return for the year of 1990. The Corporation's fiscal year ended October 29, 1990 which is two months after the releases were signed. The corporate losses had not been assessed as of August 31, 1990. Defendant claims the corporation is not a "person" capable of withstanding "bodily injury" as prescribed in the subject policies.

### CONCLUSIONS OF LAW

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In *St. Amant v. Benoit*, 806 F.2d 1294, 1296–97 (5th Cir.1987), the Fifth Circuit addressed the law as regards summary judgment and stated that "[t]he mere existence of a factual dispute does not by itself preclude the granting of summary judgment. '[T]he requirement is that there be no *genuine* issue of *material* fact.' *Anderson v. Liberty Lobby*, 477 U.S. [242], [248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986) (emphasis in original)." (citations omitted).

The Fifth Circuit has addressed when an issue is genuine.

> [A]n issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict

in favor of the moving party, the issue is not genuine.

*Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis,* 799 F.2d 218, 222 (5th Cir.1986) (footnotes omitted).

The United States Supreme Court further stated in *Liberty Lobby* that as to materiality, "[o]nly disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510.

█ The Supreme Court has noted that the standard for summary judgment mirrors the standard for a directed verdict, the main difference between the two being when they are used, as the inquiry under each is the same. See *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Barebones allegations are insufficient to withstand summary judgment because the opposing party 'must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard, et al. v. City of Greenwood, Miss., et al.,* 783 F.2d 1311, 1315 (5th Cir.1986) (citing *Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc.,* 695 F.2d 839, 845 (5th Cir.1983)).

This Court asserts diversity jurisdiction pursuant to 28 U.S.C. section 1332. The plaintiff is a Mississippi Corporation where the defendant is an Illinois Corporation. The amount in controversy exceeds $50,-000.00. This Court follows the principles of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1939), therefore, Mississippi substantive law governs. The Motion for Partial Summary Judgment filed by the plaintiff and the Counter–Motion for Summary Judgment filed by the defendant are based upon the same legal arguments. The Court will now address both.

**A.** *The releases signed by the Pembertons do not preclude the subsequent claim by the corporation.*

█ The defendant alleges that releases signed by Garlon and Dee Ann Pemberton bar the Pembertons forever and fully from "any and all claims for injuries, property damage, and any and all other damages sustained by the undersigned as a result of a vehicular accident which occurred on or about October 28, 1989, including but not limited to any claim for benefits of any description" listed in policies issued to Garlon and Dee Ann Pemberton or Pemberton Oil, Inc. by State Farm. In a release contract, "a party releases only those parties whom he intends to release...." *Smith v. Falke,* 474 So.2d 1044, 1047 (Miss. 1985), citing *Zenith Radio Corp. v. Hazeltine Research,* 401 U.S. 321, 347, 91 S.Ct. 795, 810, 28 L.Ed.2d 77, 97 (1971), *rehearing denied,* 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552. Defendant bears the burden of proving Dee Ann or Garlon Pemberton executed the releases under the authority or at the direction of Pemberton Oil, Inc. There is no evidence alluding to any intention of the Pembertons to include Pemberton Oil, Inc. in the releases. The said releases clearly were executed in favor of State Farm.

This Court agrees with the defendant that according to the laws of Mississippi, the Pembertons are bound by the written terms of the release. *Fornea v. Goodyear Yellow Pine Co.,* 178 So. 914, 919 (Miss. 1938). However, this Court does not find a release of Pemberton Oil, Inc. contained in the written releases. This will have to be proved by the defendant.

If Pemberton Oil, Inc. had assigned its rights to any individual besides Garlon or Dee Ann Pemberton, the release defense could not have been raised. "[A]n action to redress injuries to a corporation, whether arising in contract or in tort cannot be maintained by a stockholder in his own name, but must be brought by the corporation because the action belongs to (it)." *Bruno v. Southeastern Services, Inc.,* 385 So.2d 620, 622 (Miss.1980). Singularly, Dee

Ann Pemberton has brought forth this suit strictly on behalf of Pemberton Oil, Inc.

Defendant argues the contracts for releases are plain and unambiguous, thus the parole evidence rule would bar the Court from changing the contract terms. This Court is not allowing parole evidence in to vary or contradict the contract terms. This Court has found coverage to exist from the contract documents of the subject policies before this Court.

Defendant alleges it is not State Farm's responsibility to make sure that Mr. Pemberton included possible losses to his Corporation in the release. It is true that Garlon Pemberton should have incorporated his individual loss of income when totalling his personal figure for the release. If Mr. Pemberton failed to include his corporate loss in his personal release, the defendant is not liable for lack of prudence or diligence in signing the contract. *Simons v. City of Columbus*, 593 F.Supp. 876, 881 (N.D.Miss.1984). It was State Farm's duty to inform Mr. Pemberton of its procedures and policies regarding corporate uninsured motorist coverage long before the signing of the release. Said insurance appears to mirror credit life insurance issued to the mortgagor. If the mortgagor is killed or injured by a third party, the mortgagee is protected. In the case at bar, the corporation should be able to recover for damage to itself via the negligence of another. Uninsured motorist insurance may not be the desired mechanism to afford such coverage yet, denial of recovery is not ascertained from these contract documents. Clearly, the loss of services of a valuable employee would affect the corporation. The Corporation should not have to bear the cost of another's negligence after it has paid for such insurance. The key fact before this Court is that Pemberton Oil, Inc. has paid for the protection it is now being denied.

B. *Pemberton Oil, Inc. is a "person" under the terms of the insurance policies in question.*

 MCA 83–11–103 defines "insured" as the named insured on the face of the policy. It is undisputed that Pemberton Oil, Inc. is the named insured on the policies in question. Pemberton Oil, Inc. paid the premiums for the aforementioned policies. In the case of *General Insurance Co. of America v. Icelandic Builders*, 24 Wash.App. 656, 604 P.2d 966 (1979), the named insured was the corporation and there was no other designated insured. The court in *General Insurance* held there was no ambiguity thus, "[t]he courts cannot create an ambiguity when none exists and thereby rewrite a policy." *Id.*, 604 P.2d at 968.

Defendant claims that Pemberton Oil, Inc. is not a "person" within the purview of the uninsured motorist coverage. This Court rebuts this analysis by emphasizing the law has long recognized relief for the entity known as the "corporation." A corporation is

[a]n artificial *person* or legal entity created by or under the authority of the laws of a state. The Law treats the Corporation itself as a *person* which can sue and be sued. The corporation is distinct from the individuals who comprise it (shareholders). Such entity subsists as a *body* politic ... which is regarded in law as having a personality and existence distinct from that of its several members.

(emphasis added) Black's Law Dictionary 340 (6th ed. 1990). See also *Dartmouth College v. Woodward*, 17 U.S. 518, 636, 657, 4 L.Ed. 629 (1819); *U.S. v. Trinidad Coal Co.*, 137 U.S. 160, 11 S.Ct. 57, 34 L.Ed. 640 (1890); *Bruno v. Southeastern Services, Inc.*, 385 So.2d 620, 621 (Miss. 1980).

Mississippi has long followed this view of the corporation as a person. "The Mississippi rule is the same as the general rule, that a corporation is a creature of law and it is a legal personality, separate and apart from that of it's owners." *United States v. State Tax Commission of the State of Mississippi*, 505 F.2d 633, 637 (5th Cir. 1974). In the case of *Snipes v. Commercial & Industrial Bank*, 83 So.2d 179, 182 (Miss.1955), "the corporations were persons within the meaning of the attachment statutes." Not only can a corporation sue and

be sued in its corporate name, it can enter into contracts, acquire and transfer property, and engage in a special business.

The "you" of a corporate policy, according to the defendant, is intended to mean the exclusive stock owner or the individual designated in the policy. *Dixon v. Gunter,* 636 S.W.2d 437 (Tenn.1982). To interpret the coverage clause to only mean exclusive owners would be prejudicial towards public and quasi public corporations. Garlon Pemberton, as president of the closely held Pemberton Oil Corporation, was compensated under the said policy for his personal losses. The "you" in the policies at issue is clearly the named insured, Pemberton Oil, Inc.

C. *The laws of uninsured motorist coverage, in Mississippi, requires that insurance companies compensate the insured.*

 Mississippi Code Annotated section 83–11–101 requires that all automobile insurance policies include uninsured motorist coverage unless specifically waived. There is no evidence or claim that Pemberton Oil, Inc. waived such coverage. If insurance companies are unwilling to allow recovery by corporations for harm caused by uninsured motorists, they should delete the uninsured motorist coverage clause from corporate policies or include a waiver which is consistent with Mississippi law. The Mississippi Supreme Court held in a later case "[a]ny language attempting to limit an insurer's liability must fail when it deprives the insured of benefits for which a premium was paid." *GEICO v. Brown,* 446 So.2d 1002, 1006 (Miss.1984). In Mississippi, contracts for insurance are to be liberally construed in favor of the insured and strictly construed against the author. *Boyd v. Mississippi Home Insurance Co.,* 75 Miss. 47, 21 So. 708 (1897).

This Court finds that it would be unreasonable to allow State Farm and other insurance companies to deny the existence of claims made on behalf of injured corporations, these being the same corporations the insurance companies previously recognized for their own benefit. State Farm acknowledged the corporation at the time of policy formation and at the time premiums were paid. Contrarily, State Farm denies such existence at the time of recovery. To allow such denial of coverage would be to encourage unjust enrichment on the part of the insurance company. If uninsured motorist coverage is not applicable to a corporation, independent from an individual, the courts should not continue to allow insurance companies to collect premiums for said coverage. The insurance companies have a lucrative business in the area of corporate uninsured motorist coverage for they are presently able to accept money and deny recovery except for in the most limited instances.

Mississippi Supreme Court held in *Southern Farm Bureau Casualty Insurance v. Roberts,* 323 So.2d 536 (Miss.1975), that the windfall should be in favor of the insured opposed to the insurer.

The fact that the legislature required an uninsured motorist provision in all policies, added to the fact that a premium has been collected on each of the policies involved, should result in the policy holder's receiving what he paid for on each policy, up to the full amount of his damages. 'But if the question must be resolved on the basis of who gets the windfall, it seems more just that the insured who has paid premiums should get all he paid for rather than that the insurer should escape liability for that which it collected a premium.'

*Id.* at 538, citing *Van Tassle v. Horace Mann Mutual Ins. Co.,* 207 N.W.2d 348, 351–52 (Minn.1973).

The U.S. Supreme Court held that under Mississippi Law, the Fourteenth Amendment protects a company from unreasonable and arbitrary intervention with fair returns upon its property investments. *Mississippi Railroad Commission v. Mobile & Ohio Railroad Commission,* 244 U.S. 388, 37 S.Ct. 602, 61 L.Ed. 1216 (1917). According to the CCH Corporation Law Guide:

Automobiles, trucks and other motor vehicles are an important part of the property of every business enterprise [and]

are commonly insured against damage [and] policies covering liability for property damage and bodily injury are in universal use by businesses....

2 Corporation L.Rep. (CCH) Paragraph 4004, 8024 (1988).

To allow a corporation to pay premiums and not allow a corporation to recover for its losses would be against public policy and a violation of the laws of both contracts and corporations. If this Court found that a corporation could no longer sustain injury, there would no longer be a cause of action for derivative suits, breach of contracts, or property damage.

D. *A corporation can suffer economic injury and should be able to recover from an insurance policy for which it has paid premiums.*

 The question then arises as to whether or not the corporation is able to recover for "bodily" injury. State Farm argues the Corporation cannot suffer "bodily injury." The defendant relies on the court's finding in *Cutter v. Maine Bonding & Casualty Co.*, 133 N.H. 569, 579 A.2d 804 (1990), which held a family member provision of a corporate uninsured motorist policy, to be null and void. While this Court agrees the corporation cannot have children or a spouse, this Court does not believe that a corporation cannot suffer "bodily injury." The corporation is not a body consisting of blood, tissue and skin, but a political body which most laws of our nation apply and which sustains economic injury. According to *Webster's Seventh New Collegiate Dictionary*, G & C Merriam Co. 94 (Springfield, Mass.1965), "bodily" can mean both "in the flesh" and "as a whole: altogether." The word "body", in the English language, not only refers to the "material part of man" but also to "the nave of a church," "the main part of a document," "ordinary reading matter" and the most relevant definition to this case, "a group of individuals organized for some purpose: corporation." *Id.*

The public policy behind the formation of required uninsured motorist coverage was to put an innocent party into the same shoes had it been afforded legal action against tortfeasors.

[T]he strong public policy favoring uninsured motorist coverage, as enunciated in [MCA section 83–11–101], is not frustrated by the fact that a corporation, as a named insured cannot sustain bodily injury.

*General Insurance Company of America v. Icelandic Builders, Inc.*, 604 P.2d 966, 968. The Washington court continued:

The incapability of corporation to sustain bodily injury does not excuse the insurer from any possible liability arising from the endorsement. *Id.*

Under Mississippi law, uninsured motorist coverage is not limited to damages for bodily injury or death, the law also allows recovery of loss of income. *Black v. Fidelity & Guaranty Ins. Underwriters, Inc.*, 582 F.2d 984 (5th Cir.1978).

E. *The automobile insurance policies issue by the defendant to Pemberton Oil, Inc. provides the Corporation with uninsured motorist coverage, thus damages may be awarded.*

 The plaintiff will have the burden of proving the said accident was the proximate cause of the loss suffered by the corporation. Actual damages must also be proved by the plaintiff and that such damages are not speculative. Lost profits are recoverable if they can be proved with reasonable certainty. *Lundgren v. Whitney's, Inc.*, 94 Wash.2d 91, 614 P.2d 1272 (1980). The injured party should not derive profit nor double recovery from the injury. *Cook Industries, Inc. v. Carlson*, 334 F.Supp. 809, 816 (N.D.Miss.1971); *Mississippi Power Co. v. Harrison*, 247 Miss. 400, 152 So.2d 892, 903 (1963); *Gillis v. Sonnier*, 187 So.2d 311 (Miss.1966).

Defendant follows the assertion in *Continental Casualty Co. v. P.D.C., Inc.*, 931 F.2d 1429, 1430 (10th Cir.1991), that the corporate executive has "shelved his individual hat, donned his corporate hat and came back for another bite of the apple." The defendant must take notice that Garlon Pemberton is not a party to this law suit and would be an incidental beneficiary if the corporation is allowed recovery.

Defendant argues corporations should obtain employee insurance to protect itself against corporate loss due to a valuable employee being injured by a third party. The court in *I.J. Weinrot & Son, Inc. v. Jackson*, 40 Cal.3d 327, 220 Cal.Rptr. 103, 111, 708 P.2d 682, 690 (1985), discusses this type of insurance referred to as "key employee insurance" or "key man insurance." This is a plausible solution for insurance companies in the future. Once insurance companies distinguish corporate uninsured motorist coverage is strictly for injuries sustained by covered employees and not the corporation itself, employee insurance would be a viable option for corporations.

This Court is not trying to open the floodgates on *per quod servitium amisit* [1] claims by employers. The policies in question limit bodily injury to "include damages for care and loss of services, due to bodily injury." Policy, at 11, 12. We cannot overlook the aforementioned language of the policy. This clause, along with the fact the corporation paid premiums for recovery now being denied, convinces this Court that corporate coverage exists.

This Court is not opposing uninsured motorist recovery limitations set forth by the insurance company, but the manner in which it is presently executing its wishes. This Court believes insurance companies should only accept premiums for the coverage they plan to pay recovery claims on. It is a simple matter of correcting the corporate automobile insurance forms to reflect the actual intentions of insurance companies.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion of the Plaintiff, Dee Ann Pemberton, for Partial Summary Judgment is hereby GRANTED, and the Counter–Motion of the defendant, State Farm Mutual Insurance Company, for Summary Judgment is hereby DENIED.

SO ORDERED AND ADJUDGED.

---

1. "Whereby he lost the service [of his servant]".