[No. 27541-4-II.   Division Two.   November 22, 2002.]

THE EAGLE GROUP, INC., *Respondent*, v. MIKE PULLEN, ET AL., *Appellants*.

*Mark R. Fahrenkrug* and *William F. Knowles*, for appellants.

*Sandra J. Rovai* (of *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*), for respondent.

HUNT, C.J. — RAS Builders, Inc. and Mike Pullen (RAS) appeal a jury award of damages and the trial court's award of attorney fees and exemplary damages to The Eagle Group, Inc., a general contracting firm. The jury's award compensated Eagle for Pullen's taking employees, clients, files, construction projects, and an office lease from Eagle's branch office in Portland, Oregon, when he left Eagle to join RAS. RAS argues that the trial court erred in (1) ruling that Eagle's failure to produce evidence during discovery did not eradicate Eagle's admissible evidence of damages; (2) giving the jury an instruction on damages; and (3) awarding attorney fees and exemplary damages to Eagle where the special verdict form did not ask the jury to determine whether RAS had acted maliciously.

Finding no reversible error, we affirm and award attorney fees on appeal to Eagle.

## FACTS

### I. LAWSUIT BELOW

In 1994, Eagle opened a branch office in Portland, Oregon, and, in 1997, hired Pullen to manage it. Two years later, Pullen left Eagle and joined RAS, another general contracting firm, taking Eagle's employees, clients, files, construction projects, and office lease with him. Eagle sued RAS and Pullen, alleging violations of the Uniform Trade Secrets Act (UTSA), chapter 19.108 RCW, tortious interfer-

ence with business relations, breach of the duty of loyalty, conversion, and unjust enrichment.

## II. Pretrial Discovery

Eagle principals Glenn Bond and Kirk Figenshow hired CPA Paul Sutphen of RGL Gallagher L.L.C. to estimate Eagle's damages. During pretrial discovery, Eagle identified Sutphen as a rebuttal witness and consistently deferred to him on questions about its damages. For example, Eagle repeatedly answered interrogatories with the statement, "The Eagle Group suffered the loss of its Portland office which served the Oregon and southern Washington area. The report prepared by RGL Gallagher, LLC, will be provided." Clerk's Papers (CP) at 57-58. Bond and Figenshow both testified at their depositions that they did not yet know the amount of damages because Sutphen had not finished his report.

The stipulated discovery deadline was March 31, 2000. On March 6, 2000, Eagle notified RAS that Sutphen's report estimating Eagle's damages would be ready by March 17 and that he was available for deposition on March 20, 24, and 27-31. RAS received Sutphen's report by March 20. In the report, Sutphen estimated Eagle's damages at $305,400.

RAS attempted to schedule Sutphen's deposition for April 4, a few days after the March 31 discovery deadline. Eagle offered to extend the discovery deadline to allow RAS to depose Sutphen on April 4, and the parties signed a stipulation to this effect. But on April 3, Eagle cancelled Sutphen's deposition because of a schedule conflict and because the discovery deadline had passed. RAS never deposed Sutphen.

Instead, on April 7, RAS moved to exclude Sutphen from testifying at trial, arguing that Eagle had "held him back" during discovery. Report of Proceedings (RP) (Apr. 7, 2000) at 8. In addition, RAS argued that (1) if Sutphen could not testify, his report should be inadmissible; and (2) without

Sutphen's report, Eagle would have no evidence of its monetary damages. Eagle responded that Bond and Figenshow would testify as to Eagle's damages and that Sutphen would then rebut any argument by RAS that Eagle had suffered no damages.

The trial court declined to rule on this motion, stating,

> If there's no new evidence about damages or financial impacts presented during the defense case, you don't have a rebuttal witness.
>
> It looks to me right now like that's probably the case; although, it's very premature for me to rule on that because I really don't know what the evidence will be from the defendant on these issues.

RP (Apr. 7, 2000) at 16.

Arguing that Eagle had failed to respond to a discovery request, RAS also moved to compel production of Eagle's payroll records and personnel records for certain employees. Eagle asserted that it had provided the requested payroll records. The trial court ruled that it would "not . . . allow evidence that wasn't provided during discovery to be admitted. . . . If it turns out that this stuff is payroll information and [plaintiff's counsel] hasn't given it to [defense counsel], then [plaintiff's counsel is] not going to be allowed to use it." RP (Apr. 7, 2000) at 17-18.

### III. MOTION FOR SUMMARY JUDGMENT

In August 2000, RAS moved for summary judgment, arguing that Eagle would be unable to prove damages at trial because it had not produced admissible evidence of damages during discovery. In response, Eagle attached its damages estimate to Glenn Bond's declaration. RAS argued that Bond and Figenshow could not testify from personal knowledge about Eagle's damages because they had previously deferred all interrogatory and deposition damages questions to Sutphen.

The trial court denied summary judgment, stating:

> The issue as to whether or not [Eagle has] been damaged seems to be conceded. . . . At this point I don't think it's appropriate for me to make a decision based on the record as it stands now. There is damage. Maybe it's a dollar. I don't know. . . . We'll have to see what happens at trial and what is admissible and what isn't admissible.

RP (Sept. 1, 2000) at 9-10.

## IV. TRIAL

When trial began on April 23, 2001, RAS moved in limine to exclude all evidence of Eagle's damages, including Sutphen's testimony. The trial court again declined to rule on whether specific evidence would be admissible.

Sutphen did not testify at trial, and Eagle did not offer his report in evidence. Instead, Bond testified about the amount of Eagle's damages. Over RAS's objections, the trial court admitted two exhibits: (1) exhibit 109, a spreadsheet of Eagle's Portland office expenses from 1997 through 1999; and (2) Exhibit 111, a spreadsheet of Eagle's Portland office revenue for the same years. Bond testified that these exhibits were the same materials he had provided to Sutphen for estimating Eagle's damages. Based on these exhibits, Bond testified that the Portland office generated an average of $141,000 per year from 1997 to 1999. He estimated the value of Eagle's Portland branch at three times this amount, or $424,000.

## V. VERDICT

RAS moved for a directed verdict, arguing that Eagle had improperly relied on damages evidence not produced during discovery. The trial court denied the motion.

The jury awarded Eagle damages totaling $332,500. RAS moved for judgment notwithstanding the verdict or a new trial, again arguing that the damages award was based on

evidence not produced in discovery. Again, the trial court denied the motion.

The trial court also awarded Eagle exemplary damages totaling $25,000 and $77,305 in attorney fees.

## ANALYSIS

### I. Damages Evidence

RAS argues that (1) the trial court erred in admitting Eagle's damages evidence at trial; (2) Eagle could offer damages evidence only through Paul Sutphen, who did not testify; and (3) exhibits 109 and 111, the basis for Eagle's damages estimate, were inadmissible because Eagle did not provide them during discovery.

■ ■ We review a trial court's evidentiary rulings, including those made in the course of a summary judgment proceeding, for an abuse of discretion. *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 79 Wn. App. 368, 372, 901 P.2d 1079 (1995), *review denied*, 129 Wn.2d 1020 (1996). A trial court has broad discretion under CR 26 to manage the discovery process and, if necessary, to limit the scope of discovery. CR 26 (b), (c); *Rhinehart v. Seattle Times Co.* 98 Wn.2d 226, 232, 654 P.2d 673 (1982).

### A. Exclusion of Evidence not Produced in Discovery

■ ■ RAS relies heavily on the trial court's pretrial comment that it would exclude evidence not produced during discovery. But the record does not indicate that the trial court intended the comment as a definite ruling on the admissibility of evidence. And even if the trial court intended its pretrial comment as a ruling, such ruling was tentative.

When a trial court makes a tentative ruling before trial, error is not preserved for appeal unless the party objects to admission of the evidence when it is offered, allowing the

court an opportunity to reconsider its prior ruling.[1] *Sturgeon v. Celotex Corp.*, 52 Wn. App. 609, 623, 762 P.2d 1156 (1988) (denial of motion in limine did not preserve error for appeal where "[t]he motion was so broad in scope and discussed the evidence to be excluded in such a general way as to implicitly suggest to the trial judge the likelihood of error if he tried to make a definitive, final ruling before hearing any of the testimony in the case"). Here, RAS repeatedly objected to admission of Eagle's damages evidence at trial, arguing that the trial court had earlier stated it would exclude evidence not produced during discovery. But the trial court's pretrial ruling was tentative, not final.

The record does not indicate that the trial court intended to make a broad pretrial ruling excluding all evidence not produced during discovery regardless of its nature. RAS did not request such a ruling; rather, it moved to compel production of Eagle's payroll records. When RAS later asked the court to make a broad ruling excluding all of Eagle's damages evidence, the court decided to wait until trial to "see . . . what is admissible and what isn't admissible." RP (Sept. 1, 2001) at 10. As in *Sturgeon*, "[t]he court made no statement that would suggest that the court was making a final, definitive ruling upon which the parties could rely." *Sturgeon*, 52 Wn. App. at 623.

### B. SURPRISE; PREJUDICE

■ Surprise is not a basis for excluding relevant evidence under ER 403 unless the opposing party will suffer unfair prejudice. *Lockwood v. AC&S, Inc.*, 44 Wn. App. 330, 363, 722 P.2d 826 (1986) (citing ER 403 comment). Here, RAS (1) knew that Eagle was damaged, (2) knew the extent of Eagle's damages from Sutphen's report, which it received

---

[1] We acknowledge that parties are entitled to rely on a trial court's definite, final ruling on the admissibility of evidence without again objecting during trial. *Sturgeon v. Celotex Corp.*, 52 Wn. App. 609, 622, 762 P.2d 1156 (1988) (citing *State v. Koloske*, 100 Wn.2d 889, 896, 676 P.2d 456 (1984), *overruled on other grounds by State v. Brown*, 113 Wn.2d 520, 782 P.2d 1013 (1989)). But such is not the case here.

before the discovery deadline, and (3) does not rebut Eagle's assertion that it produced exhibits 109 and 111 seven months before trial (although after the discovery deadline). *See* Resp't's Br. at 11-12. Thus, RAS has not shown unfair prejudice.

### C. "BEST EVIDENCE"

RAS also argues that the trial court erred by allowing Glenn Bond to testify about the amount of Eagle's damages and by admitting exhibits 109 and 111 during his testimony. It contends that (1) Bond's testimony and these exhibits were not the best evidence of Eagle's lost profits; and (2) Sutphen's report and testimony, which were inadmissible in Eagle's case in chief,[2] were the best evidence available.

██ A plaintiff may recover lost profits if the evidence establishes the damages with reasonable certainty. *Lundgren v. Whitney's, Inc.*, 94 Wn.2d 91, 97-98, 614 P.2d 1272 (1980). Although any reasonable basis for estimating the loss will suffice, the evidence generally must be the "best available" under the circumstances. *Lundgren*, 94 Wn.2d at 98. But this rule, requiring the best evidence available, pertains to the substance of the evidence, not its source.

The Washington Supreme Court adopted the rule in *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 390 P.2d 677 (1964). A plaintiff ordinarily proves lost profits based on its profit history. But a new business has no profit history. Under the pre-*Larsen* rule, a new business could not obtain lost profits as damages. *Larsen*, 65 Wn.2d at 16-17. The Supreme Court departed from this traditional approach in *Larsen*, holding that a plaintiff should have the opportunity to present the best evidence available to show its lost profits, namely, the evidence that proves the plaintiff's damages with the greatest certainty. *Larsen*, 65 Wn.2d at

---

[2] Nor could Eagle call Sutphen as a witness on rebuttal or introduce his report on rebuttal because RAS presented no damages evidence to rebut in its defense case.

17.[3] The reliability of such evidence is for the trier of fact to determine. *Larsen*, 65 Wn.2d at 18.

■ ■ Here, RAS challenges not the nature of the evidence presented, but its source. RAS contends that because Eagle deemed it necessary to hire an expert during discovery, it was thereby compelled to rely on this expert at trial. Clearly, expert testimony alone is a sufficient basis for an award of lost profits. *Larsen*, 65 Wn.2d at 17. But when the plaintiff can also establish a profit history, as Eagle did here, expert testimony is not the only evidence of lost profits. Moreover, here, the exhibits admitted at trial, on which Bond based his lost profits testimony, contained the same information that expert Sutphen would have relied on had Eagle called him to testify in its case in chief. The reliability of Eagle's evidence was for the jury to weigh.

### D. Comparison of Bond's Deposition and Trial Damages Estimates

■ RAS also contends that the trial court abused its discretion by allowing Bond to testify about the amount of damages after he was unable to provide an exact amount in his deposition. RAS relies on *Marshall v. AC&S, Inc.*, 56 Wn. App. 181, 185, 782 P.2d 1107 (1989). In *Marshall*, the court held that a party may not create an issue of fact to avoid summary judgment with an affidavit that " 'merely contradicts, without explanation, previously given clear testimony.' " *Marshall*, 56 Wn. App. at 185 (quoting *Van T. Junkins & Assocs. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)).

---

[3] *See Lundgren*, 94 Wn.2d at 92-93, 98. There, a fish handling company sued for profits lost when its capacity decreased because of an employee's injury. The appellant challenged the jury's award based on the company's gross receipts, arguing that profit history would have been the best evidence. The Supreme Court held that the gross receipts established the loss with sufficient certainty. The money received per pound of fish was all profit, except for shipping expenses. Thus, the decreased capacity to handle fish directly affected the company's profit. *See also Jacqueline's Wash., Inc. v. Mercantile Stores Co.*, 80 Wn.2d 784, 498 P.2d 870 (1972) (best evidence available on value of lost merchandise was opinion evidence of the market value at the time of the loss, not the price received at a subsequent "fire sale").

Here, Bond did not contradict his deposition testimony. At his deposition, Bond stated that he did not know the exact amount of damages because he had given his financial information to Sutphen, who was calculating the damages. Bond did not contradict this deposition testimony by later relying on the same information to provide a damages estimate at trial.

The trial court did not abuse its discretion in allowing Bond to testify about the amount of Eagle's damages and by admitting the exhibits on which Bond relied.

## II. JURY INSTRUCTIONS

### A. "ACTUAL DAMAGES"

■■ ■■ Parties are entitled to jury instructions that accurately state the law. *Douglas v. Freeman*, 117 Wn.2d 242, 256-57, 814 P.2d 1160 (1991). RAS argues that the trial court's damages instruction misstated the nature of damages recoverable under the UTSA by allowing the jury to award damages for future losses. RAS proposed an instruction that allowed simply an award of "actual damages." Eagle argues that actual losses may include lost business opportunities. We agree.

Under RCW 19.108.030(1) of the UTSA, "a complainant may recover damages for the actual loss caused by misappropriation," together with any additional damages needed to compensate for unjust enrichment. Here, the trial court's instruction allowed the jury to award "the actual losses caused by the misappropriation" of trade secrets, including "[t]he reasonable value of business opportunities with reasonable probability to be lost in the future." CP at 455.

The UTSA does not define "actual loss." When a statute does not define a phrase, we give the phrase its ordinary meaning. *One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Invs., Inc.*, 108 Wn. App. 330, 340, 30 P.3d 504 (2001). Actual damages should "compensate for a proven injury or loss" and "repay actual losses." BLACK'S LAW DICTIONARY 394

(7th ed. 1999). Actual damages include "damages for injury in fact, as distinguished from exemplary, nominal or punitive damages." *Ellingson v. Spokane Mortgage Co.*, 19 Wn. App. 48, 58, 573 P.2d 389 (1978). Lost profits are a recoverable element of damages. *See Lundgren*, 94 Wn.2d at 98. These definitions do not exclude recovery for the value of lost business opportunities or future profits. Thus, the trial court did not abuse its discretion by instructing the jury that it could award damages for future losses.

## B. Double Recovery

RAS further argues that the trial court's damages instruction (1) failed to limit the jury's award to one type of recovery, and (2) allowed the jury to award both the damages sustained by Eagle and the profits earned by RAS, resulting in a double recovery.

RAS proposed the following damages instruction:

> If you find that Mike Pullen or RAS Builders misappropriated any of Plaintiff's trade secrets, you may award for the actual damages caused by the misappropriation.

> Your amount of damages may combine one or more of the foregoing, but you may not combine them in a manner that results in a double recovery.

CP at 404.

The trial court gave the following instruction:

> If you find that Pullen or RAS Builders misappropriated any of The Eagle Group's trade secrets, you may award for the actual losses caused by the misappropriation.

> If you find for the Plaintiff, your verdict should include the following past economic damages elements:

> > (a) The reasonable value of business opportunities lost to the present; and

> > (b) The reasonable value of necessary expenses which have been incurred to the present time.

> In addition, you should consider the following future economic damages elements:

(c) The reasonable value of business opportunities with reasonable probability to be lost in the future.

CP at 455.

Contrary to RAS's contention, neither the trial court's instruction nor RAS's proposed instruction allowed the jury to base its award on the profits RAS earned as a result of its misappropriation. Rather, both instructions asked the jury to award Eagle its actual losses.[4] The trial court did not err in giving its jury instruction on damages.

## III. ATTORNEY FEES AND EXEMPLARY DAMAGES

██ ██ The UTSA allows the trial court to award attorney fees and exemplary damages if the defendant committed "wilful and malicious misappropriation" of trade secrets. RCW 19.108.030(2), .040. The trial court's award is reversible only if clearly erroneous. *Ed Nowogroski Ins., Inc. v. Rucker*, 88 Wn. App. 350, 360, 944 P.2d 1093 (1997). RAS contends that the trial court erred by awarding attorney fees and exemplary damages under the UTSA because there was no finding of maliciousness.

Here, RAS proposed the special verdict form, which asked the jury only whether RAS and Pullen acted willfully, to which the jury answered "yes." The verdict form did not ask the jury to determine maliciousness, but neither party objected to this omission. Instead, the trial court based its exemplary damages and attorney fee awards on the jury's finding of willfulness and, presumably, on the facts of the case.

### A. PRESERVATION OF ERROR

Eagle argues that RAS has not preserved this error for appeal. But at trial, RAS argued against awarding attorney fees and exemplary damages based on the lack of a finding

---

[4] Moreover, error, if any, was harmless because the only evidence of damages at trial was Eagle's Portland office profit history.

of maliciousness. Thus, RAS properly preserved this issue for appeal.[5]

## B. Special Verdict: Willfully; Maliciously

■■ ■ RAS does not argue that maliciousness was an issue solely for the jury or that the trial court could not have entered a finding on maliciousness. Rather, RAS argues that absent a specific finding that RAS maliciously misappropriated Eagle's trade secrets, the trial court could not award attorney fees and exemplary damages. Eagle counters that the terms "willful" and "malicious" are synonymous and, therefore, the jury's special verdict finding of "willfulness" necessarily includes "maliciousness."

Neither argument resolves the issue, but CR 49(a) does. The parties did not submit the question of maliciousness to the jury, and the trial court did not enter an express finding of maliciousness. Thus, under CR 49(a), RAS is deemed to have waived submission of maliciousness to the jury, and the trial court is deemed to have made a maliciousness finding consistent with the jury's special verdict of willfulness. *See* CR 49(a).[6]

Moreover, given the extent of the misappropriation here and RAS's apparent lack of a defense to liability, the record supports the trial court's CR 49(a)-implied finding of maliciousness. Accordingly, the trial court did not clearly err in awarding attorney fees and exemplary damages to Eagle

---

[5] Eagle also argues that RAS invited the error by proposing the special verdict form language that asked the jury whether the defendants acted willfully. But maliciousness was not an issue in the liability and compensatory damages stage; it became relevant only later, when Eagle requested attorney fees and exemplary damages. *See* RCW 19.108.030, .040.

[6] CR 49(a) provides:

If in [submitting a special verdict to the jury] the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his rights to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, *it shall be deemed to have made a finding in accord with the judgment on the special verdict.*

(Emphasis added.)

under the UTSA, RCW 19.108.030(2), .040 based on RAS' willful and, by implication, malicious actions.

IV. ATTORNEY FEES ON APPEAL

■■ Eagle requests attorney fees and expenses on appeal under the UTSA and RAP 18.1. A prevailing party is entitled to attorney fees and expenses both at trial and on appeal under RCW 19.108.040. *See Boeing Co. v. Sierracin Corp.*, 108 Wn.2d 38, 64, 66, 738 P.2d 665 (1987). A party who prevails in part is entitled to attorney fees for its successful claims. *Sintra, Inc. v. City of Seattle*, 131 Wn.2d 640, 668, 935 P.2d 555 (1997). Here, Eagle has prevailed on appeal and, therefore, is entitled to attorney fees on appeal.

SEINFELD and BRIDGEWATER, JJ., concur.

Reconsideration denied January 2, 2003.

Review denied at 149 Wn.2d 1034 (2003).